UNITED STATES of America,
Plaintiff–Appellee,

v.

Carl LAWSON, Jr.,
Defendant–Appellant.

No. 88–5099.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 16, 1988.

Decided April 12, 1989.

indefensibly narrow reading of *Foremost Insur-      ance.*

Louis DeFalaise, U.S. Atty., David A. Marye, Asst. U.S. Atty., Thomas L. Self (argued), Lexington, Ky., for U.S.

Kenneth Taylor (argued), Daugherty, Thomas & Taylor, Nicholasville, Ky., for Carl Lawson, Jr.

Before MILBURN and NORRIS, Circuit Judges, and SUHRHEINRICH, District Judge.[*]

SUHRHEINRICH, District Judge.

Defendant Carl Lawson, Jr. was convicted of five counts of a twelve-count indictment for a number of offenses involving illegal firearms. These offenses included conspiracy to receive, possess, and manufacture illegal machine guns as well as aiding and abetting a codefendant's manufacture and possession of illegal machine guns. In the instant appeal, defendant argues that there was insufficient evidence presented at trial to sustain the aiding and abetting convictions. In addition, defendant contends the admission of various prior consistent statements was improper under Fed.R.Evid. 801(d)(1)(B). Upon review, we conclude that there was sufficient evidence to support defendant's convictions and that the district court did not abuse its discretion in admitting various prior consistent statements. For the reasons stated below, we affirm.

## I.

In January 1986, defendant Carl Lawson questioned a friend, Doug Puckett, about obtaining guns and hand grenades. Puckett put defendant in contact with Owen Sams. Defendant told Sams that he wanted "five Uzis, fully automatic, with no paperwork on them." Sams in turn contacted his friend, Bill Kagin, a licensed firearms dealer, and discussed defendant's request for machine guns. Kagin then met with another licensed firearms dealer, David Lawson (unrelated to defendant), to discuss the possibility of filling this request by obtaining semiautomatic CAR–15s which could be converted to automatic machine guns. Kagin and David Lawson agreed that David Lawson would convert the semiautomatic CAR–15s ordered by Kagin. In the meantime, Sams told defendant that the guns would cost $1,200 each, and defendant paid Sams between $4,000 and $4,500 towards that price. Upon conversion, the guns were delivered to Sams but were never received by defendant; Sams apparently used the guns to pay drug debts.

## II.

The instant indictment charged defendant, *inter alia*, in Count 1 with conspiracy to receive and possess illegally made, unregistered firearms; in Count 6 with aiding and abetting David Lawson in knowingly making illegal machine guns; and in Count 7 with aiding and abetting David Lawson in knowingly receiving and possessing illegal machine guns. On appeal, defendant contends there was insufficient evidence to sustain his conviction for aiding and abetting under Counts 6 and 7; defendant does not contest the sufficiency of the evidence as to the conspiracy charged in Count 1. Defendant contends that all of the relevant evidence presented at trial related to his discussions with Sams about obtaining five Uzi machine guns. The government agrees that there is no evidence in the record indicating that defendant knew David Lawson was attempting to, and actually did, convert semiautomatic CAR–15s into automatic weapons. Thus, defendant contends that there was no evidence to support his convictions for aiding and abetting the illegal conversion and possession of the CAR–15s.

In reviewing defendant's assertion that insufficient evidence was presented at trial to sustain the jury verdict, "[t]he government must be given the benefit of all infer-

[*] Honorable Richard F. Suhrheinrich, United States District Judge for the Eastern District of Michigan, sitting by designation.

ences which can reasonably be drawn from the evidence.... It is not necessary that the evidence excludes every reasonable hypothesis except that of guilt." *United States v. Adamo,* 742 F.2d 927, 932 (6th Cir.1984) (citations omitted), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985). Aiding and abetting as defined in 18 U.S.C. § 2 provides in pertinent part:

(a) Whoever ... aids, abets, counsels, commands, induces or procures [an offenss against the United States], is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Aiding and abetting requires that a defendant "in some sort associate himself with the venture, that he participates in it as something he wishes to bring about, and that he seek by his action to make it succeed." *United States v. Winston,* 687 F.2d 832, 834 (6th Cir.1982) (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir. 1938) (Hand, J.)). Thus, it has been said that aiding and abetting involves (1) an act by a defendant which contributes to the execution of a crime; and (2) the intent to aid in its commission. *United States v. Stanley,* 765 F.2d 1224, 1242 (5th Cir.1985).

### A. Aiding and Abetting the Possession of Illegal Weapons

 Count 7 charged defendant with aiding and abetting David Lawson in knowingly receiving and possessing illegal machine guns in violation of 18 U.S.C. § 2 and 26 U.S.C. § 5861(c). Section 5861(c) makes it unlawful for any person "to receive or possess a firearm made in violation of the provisions of this chapter...." This court has interpreted § 5861(c) as a strict liability offense; thus, for a principal to be liable under § 5861(c), he need only possess the firearm. *United States v. Decker,* 292 F.2d 89, 90 (6th Cir.), *cert. denied,* 365 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 36 (1961).

 Clearly, defendant's placing of an order and paying for illegal weapons was an act which contributed to David Lawson's possession of the weapons. As to defendant's intent, we find abundant evidence to support the jury's determination that defendant acted with the requisite intent to be found guilty of aiding and abetting in this possession. In his brief, defendant admits that "he was aiding and abetting ... the illegal possession of unregistered Uzis." (Brief at 9.) Because the guns were actually CAR–15s and not Uzis and because he had never met or had any discussions with David Lawson, defendant argues that there was no evidence that he could have intended that David Lawson possess illegal firearms. However, "no direct evidence of actual communication between the aider and abetter and the principal need be introduced." *United States v. Bradley,* 421 F.2d 924, 927 (6th Cir.1970). Defendant's intent may be inferred from the fact that he knew that his possession of the unregistered guns would be illegal, and thus anyone trying to procure the weapons for him would also be committing such an offense. *Id.* Defendant participated in the criminal venture by placing an order for the illegal machine guns and by making advance payment to Owen Sams for their purchase. Such actions definitively demonstrate participation and a desire to bring about the illegal possession of machine guns. Accordingly, we find defendant's arguments with regard to Count 7 to be without merit.

### B. Aiding and Abetting the Manufacture of Illegal Weapons

 In Count 6, defendant was charged with aiding and abetting David Lawson in knowingly making illegal machine guns. Defendant contends that he lacked the specific intent to facilitate in the manufacture of illegal weapons, arguing that the mere placing of an order for Uzis was too attenuous to the conversion of the CAR–15s as to allow an inference that he intended to facilitate the manufacture of illegal weapons. The government acknowledges in its brief that "there was no evidence that Carl Lawson knew the weapons he requested were to be manufactured by converting semiautomatic weapons to fully automatic ones...." (Brief at 13.) Thus, applying

the analysis employed above, it appears that there was insufficient evidence to convict defendant for the offenses charged in Count 7.

However, under *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946), a coconspirator can be held responsible for the substantive offenses of other coconspirators. In *Pinkerton,* the Supreme Court held that the crime of conspiracy does not merge into the completed substantive offense, and, thus, the foreseeable crimes committed by a coconspirator in the furtherance of the conspiracy may be imputed to the other coconspirators. *Id.* at 647, 66 S.Ct. at 1184. The Court reasoned that the overt act of one conspirator is imputed to the other coconspirators because each conspirator is in essence the agent of the other. *Id.* at 646–47, 66 S.Ct. at 1183–84. "The criminal intent to do the act is established by the formation of the conspiracy." *Id.* at 647, 66 S.Ct. at 1184. Moreover, one coconspirator need not even know about the acts of another to be held responsible for them. *United States v. Davis,* 809 F.2d 1194, 1203 (6th Cir.), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987).

In the instant case, the jury was properly instructed on the *Pinkerton* doctrine. (Record XXI at 138.) Based on *Pinkerton,* where defendant Carl Lawson was convicted of conspiracy to make illegal firearms and where a coconspirator was convicted for the illegal manufacture of weapons, Carl Lawson may be held liable for the substantive offense as well. "Even assuming that the evidence failed to prove aiding and abetting ... persons indicted as aiders and abetters may be convicted pursuant to a *Pinkerton* instruction." *United States v. Cerone,* 830 F.2d 938, 944 (8th Cir.1987) (collecting cases), *cert. denied,* —— U.S. ——, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988). While defendant's argument does have some logical appeal, it is clear that the law fails to support such a position. Accordingly, we affirm defendant's conviction under Count 7.

### III.

■ Defendant also contends that the district court abused its discretion in allowing the use of prior consistent statements of three government witnesses. Pursuant to Fed.R.Evid. 801(d)(1)(B), a statement is not hearsay if the statement is "consistent with [the declarant's] testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive." The decision whether to allow the admission of prior consistent statements is left to the discretion of the trial court. *United States v. Hamilton,* 689 F.2d 1262, 1273 (6th Cir. 1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983).

During the course of the investigation in the instant case, several of the eventual government witnesses testified before the grand jury and made sworn memorialized statements to various law enforcement agents. Following the testimony of these witnesses, each witness was cross-examined quite vigorously during which defense counsel noted a number of apparent inconsistencies between these prior statements and the witness's trial testimony. On redirect, the government was allowed to have the witness read the entire statement to the jury, however, the statements were not introduced as evidence and did not go to the jury room during deliberations.

■ In *Hamilton, supra,* this court addressed the circumstances under which a prior consistent statement is admissible. In several other circuits, prior consistent statements are admissible *only* if made before the supposed motive to falsify arose. *See, e.g., United States v. Quinto,* 582 F.2d 224, 232 (2d Cir.1978). However, in *Hamilton,* the court hesitated to adopt such a bright line rule, but rather required the trial judge to examine the circumstances under which the statement was made and make a determination of the statement's relevancy and probity. *Hamilton,* 689 F.2d at 1273. While these factors are more likely to be found where the statement was made prior to the alleged discrediting influence, temporal priority should not be a condition precedent to admissibility.

Such a determination does not provide for wide open admission of any prior consistent statement. However, where there are other indicia of reliability surrounding a prior consistent statement that make it relevant to rebut a charge of recent fabrication or improper motive, then the fact that the statement was made after the alleged motive to falsify should not preclude its admissibility. Of course, where the danger of unfair prejudice outweighs the probative value of the evidence Fed.R.Evid. 403 is available.

■ In *Hamilton, supra* and *United States v. LeBlanc*, 612 F.2d 1012, 1017 (6th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980), this court noted several factors involving the use of the statement which militated in favor of finding the trial court did not abuse its discretion in allowing the admission of the prior statements.

"First, the statements were only read ... not allowed to go to the jury room during its deliberations. [The *Quinto* court found it significant that a copy of the challenged statement was permitted in the jury room.] Secondly, defendant himself elicited the use of the statement ... by his reference to [it] ... on cross-examination. Further, throughout the trial, counsel argued, by inference, that [the witnesses] should not be believed because of the favorable consideration he received from the government in his plea bargaining agreement."

*Hamilton*, 689 F.2d at 1274 (quoting *LeBlanc*, 612 F.2d at 1017).

In the instant case, the trial court allowed statements from three witnesses to be read to the jury, but did not allow the statements to go to the jury room. In doing so, the trial judge expressly relied on *Hamilton*, allowing the statements to be used only under circumstances similar to those found in *Hamilton* and *LeBlanc*. Further, each of these statements was corroborated by other evidence, thereby providing the extra indicia of trustworthiness necessary to support the admission of these statements. Accordingly, we find the trial court did not abuse its discretion in admitting these statements.

IV.

For all the foregoing reasons, we affirm the judgment of conviction.