960 F.2d 150
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edmund NJEMANZE, Defendant-Appellant.
 No. 91-1630.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1992.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 90-80548; Gadola, D.J.
 E.D.Mich.
 AFFIRMED.
 Before KEITH and MILBURN, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Edmund Njemanze appeals his sentence imposed by the district court pursuant to his guilty plea to importing and aiding and abetting the importation of heroin in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2. On appeal, the sole issue is whether the district court was clearly erroneous in calculating defendant's base offense level by including the quantity of heroin found in his co-defendant's luggage based on a theory of aiding and abetting. For the reasons that follow, we affirm.
 
 I.
 
 2
 On July 12, 1990, defendant Edmund Njemanze and co-defendant Emanuel Azoroh were indicted on two counts. Count 1 charged defendants with possession of heroin with intent to distribute and aiding and abetting in violation of 21 U.S.C. § 741(a)(1) and 18 U.S.C. § 2. Count 2 charged defendants with importation of heroin into the United States and aiding and abetting in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2.
 
 
 3
 On February 11 and February 14, 1991, the district court conducted an evidentiary hearing on the defendants' motions to suppress incriminating statements. Following the hearing, the motions were denied. Subsequently, Njemanze entered into a plea agreement with the government, and on March 28, 1991, he pled guilty to Count 2 of the indictment. Under the terms of the plea agreement, the amount of heroin attributable to defendant Njemanze for sentencing purposes was a factual issue whose determination was left to the district court.
 
 
 4
 At sentencing, the district court determined that Njemanze was responsible for the 249 grams of heroin found in his co-defendant's luggage in addition to the 465 grams of heroin found in Njemanze's own luggage. As a result, Njemanze's offense level was 30 rather than 28, the level applicable if defendant had been held accountable for only 465 grams of heroin. Njemanze was given a two-point reduction for accepting responsibility as evidenced by his guilty plea and then assigned criminal history category I. In accordance with the plea agreement, the district court then sentenced Njemanze to eighty-two months incarceration and four years of supervised release.
 
 B.
 
 5
 On June 24, 1990, Njemanze and Azoroh entered the United States on a Greyhound bus from Canada through the Detroit-Windsor Tunnel. During an inspection, United States Customs officials discovered that Njemanze and Azoroh each were carrying a garment bag containing heroin. In Azoroh's garment bag, which Azoroh admitted belonged to him, officials found one package containing 249 grams of heroin. In Njemanze's bag, which Njemanze admitted belonged to him, officials found two packages containing a total of 465 grams of heroin. The heroin in Azoroh's garment bag was packaged in a business-sized envelope containing a manilla folder in which there was a plastic bag containing heroin. The heroin in Njemanze's garment bag was packaged in an identical manner. Officials found folders and envelopes identical to those used to package both defendants' heroin in a blue vinyl pouch carried by Azoroh. Azoroh's latent fingerprint was found on one of the packages of heroin in Njemanze's garment bag.
 
 
 6
 Officials also found an airline ticket and one Greyhound bus ticket receipt in each defendant's garment bag. The airline tickets set forth identical travel schedules and had consecutive serial numbers indicating one was bought immediately after the other. The date and time of purchase printed on the Greyhound bus receipts showed the bus tickets were purchased on the same day one minute apart. The airline tickets showed that both defendants traveled on the same flights departing Lagos, Nigeria on June 15, 1990, arriving in Amsterdam June 16, 1990, and then flying onto Vancouver arriving June 22, 1990. The Greyhound bus tickets showed defendants traveled together from Toronto to Detroit on June 24, 1990. Upon initial questioning by customs officials, Njemanze admitted only to traveling from Toronto to Detroit; however, upon further questioning defendant admitted that he had traveled from Lagos, Nigeria, to Vancouver by way of Amsterdam.
 
 
 7
 During defendants' detention hearing, Special Agent Susan Gie testified regarding stamped entries in both defendants' passports. According to the stamped entries in Njemanze's passport, he left Nigeria on May 11, 1990, arriving in Toronto on May 12, 1990. He then returned to Nigeria on May 28, 1990, and departed Nigeria on June 18, 1990. According to the stamped entries in Azoroh's passport, he departed Nigeria on April 16, 1990, and arrived in Toronto on April 17, 1990, and then returned to Nigeria on May 7, 1990. In regard to this evidence, Agent Gie testified that the stamps were not "put in any kind of sequence. They kind of stamped them wherever the page is open." J.A. 50. In addition, she testified to the effect that the airline tickets provided more accurate information about defendants' travel schedule.
 
 II.
 A.
 
 8
 The government bears the burden of proving conduct relevant to sentencing under the United States Sentencing Guidelines by a preponderance of the evidence. See U.S. v. Moreno, 933 F.2d 362, 374 (6th Cir.1991), cert. denied, 112 S.Ct. 265 (1992). In sentencing a defendant, the district court must determine whether the government has met its burden of proof regarding alleged relevant conduct. Id. Absent clear error, we will not set aside a district court's findings of fact underlying a sentence imposed pursuant to the United States Sentencing Guidelines. 18 U.S.C. § 3742. See also Moreno, 933 F.2d at 374. Clear error is evident when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." 933 F.2d at 374.
 
 B.
 
 9
 Njemanze argues that there is no evidence to support the district court's finding that he aided and abetted co-defendant Azoroh in importing the 249 grams of heroin found in Azoroh's garment bag. As the district court observed, this argument is logistically awkward because defendant pleaded guilty to count 2 of the indictment which charges Njemanze with unlawful importation and aiding and abetting the unlawful importation of heroin. If Njemanze did not aid and abet in the importation of the heroin found in Azoroh's garment bag, then there is simply no other heroin which Njemanze could have aided and abetted in importing.
 
 
 10
 Nevertheless, Njemanze now attempts to assert that he pled guilty to only unlawful importing and not to aiding and abetting. However, the record clearly demonstrates that Njemanze pled guilty to count 2 in its entirety. Notwithstanding Njemanze's guilty plea, his plea agreement with the government specifically states that the amount of heroin attributable to Njemanze for sentencing purposes is an issue to be determined by the district court at sentencing. In addition, when Njemanze entered his guilty plea to count 2, his counsel informed the district court that he contested the government's position that he aided and abetted Azoroh in the importation of 249 grams of heroin. Therefore, despite Njemanze's guilty plea to count 2, we will address the factual basis to support the district court's decision to attribute to Njemanze the 249 grams of heroin found in co-defendant Azoroh's luggage.
 
 
 11
 Based on the airline tickets with consecutive serial numbers and the bus tickets which were purchased within one minute of each other, the district court found that Njemanze and Azoroh had identical travel schedules from Lagos, Nigeria, to Amsterdam, on to Vancouver, then Toronto, and finally to Detroit. The district court also noted that the quantities of heroin found in both defendants' garment bags were packaged in an identical manner and that Azoroh's fingerprint was found on one of the envelopes used to package the heroin discovered in Njemanze's bag. Based on these factual determinations, the district court found that Njemanze had aided and abetted Azoroh in the importation of the 249 grams of heroin found in Azoroh's bag, and for sentencing purposes, it attributed that amount to Njemanze.
 
 
 12
 Njemanze challenges the district court's finding that Njemanze and Azoroh traveled together from Lagos, Nigeria to Amsterdam and then on to Vancouver and Toronto. Njemanze observes that according to Special Agent Susan Gie's testimony, the stamps in each defendant's passport indicated that they traveled at different times. However, Gie also testified regarding the stamps in the passports, "[t]hey're not put in any kind of sequence. They kind of stamp them wherever page [sic] is open...." J.A. 50. She further testified to the effect that the airline tickets "better establish" the true dates and times of both defendants' travel. J.A. 52.
 
 
 13
 Clearly the district court must have determined that the airline tickets and bus ticket receipts, not the stamped passports, accurately reflected Njemanze's and Azoroh's travel schedules. Based on Gie's testimony regarding the haphazard manner in which defendants' passports were stamped, this finding is not clearly erroneous.
 
 
 14
 Finally, Njemanze argues that even if one determines that Njemanze and Azoroh traveled from Lagos, Nigeria to the United States together, there is still no evidence to hold Njemanze accountable for the 259 grams of heroin found in Azoroh's garment bag. Aiding and abetting requires "(1) An act by a defendant which contributes to the execution of a crime; and (2) the intent to aid in its commission." U.S. v. Lawson, 872 F.2d 179, 181 (6th Cir.), cert. denied, 493 U.S. 834 (1989).
 
 
 15
 Defendant argues that, at best, the evidence shows only that defendant had knowledge that Azoroh was carrying heroin in his garment bag, not that he acted in any way to assist Azoroh or that he intended to aid Azoroh. In support of this argument, Njemanze erroneously relies on U.S. v. Morrow, 923 F.2d 427 (6th Cir.), vacated, 932 F.2d 1146 (1991) (argued en banc February 12, 1992; decision pending). Instead, U.S. v. Lawson, 872 F.2d at 181, is more instructive. In Lawson, we held that a defendant's participation in a venture and a defendant's intent to aid and abet in that venture may be inferred from circumstantial evidence. See also U.S. v. Frost, 914 F.2d 756, 763-764 (6th Cir.1990) (inferences may be drawn from other circumstances to serve as a basis for finding the necessary intent to facilitate the commission of the substantive crime).
 
 
 16
 In the present case, Njemanze's participation and intent may be inferred from the following facts: defendants' identical travel schedules, the identical packaging of heroin found in each defendant's bag, Azoroh's latent fingerprint found on the envelope containing heroin in Njemanze's garment bag, and the envelopes found in Azoroh's blue pouch matching those envelopes used to package the heroin. Therefore, the district court's finding that the 249 grams of heroin in Azoroh's garment bag is attributable to Njemanze for sentencing purposes is not clearly erroneous.
 
 III.
 
 17
 For the reasons stated, defendant's sentence is AFFIRMED.
 
 
 
 *
 Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation