78 F.3d 585
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
James Michael LEEK, Dario Jaramillo, Albert C. Simmons,
Josefina Jaramillo, John S. Patt, Defendants-Appellants.
 Nos. 94-6366, 94-6369, 94-6396, 94-6397 and 94-6435.
 United States Court of Appeals, Sixth Circuit.
 March 5, 1996.
 
 Before: MERRITT, Chief Circuit Judge, BATCHELDER, Circuit Judge, and DOWD,* District Judge
 PER CURIAM.
 
 
 1
 Defendants James Michael Leek, Dario Jaramillo ("D. Jaramillo"), Albert C. Simmons, Josefina Jaramillo ("J. Jaramillo"), and John S. Patt, appeal from their convictions and sentences secured under a multi-count indictment charging them with conspiracy to defraud under 18 U.S.C. § 371, wire fraud under 18 U.S.C. § 1343, inducing interstate travel as part of a scheme to defraud under 18 U.S.C. § 2314, money laundering under 18 U.S.C. § 1956(a)(1)(A) and 18 U.S.C. § 1957, and aiding and abetting under 18 U.S.C. § 2. For reasons that follow, we AFFIRM defendants' convictions on all counts except that relating to inducing interstate travel as part of a scheme to defraud, but VACATE their sentences, and REMAND for re-sentencing consistent with this opinion.
 
 
 2
 I. Facts.
 
 
 3
 In broad brush-strokes, the events leading to defendants' convictions were as follows. In the early part of the 1990s, based upon representations made by several of the defendants, a handful of land developers paid large sums of money to Equity Capital Investments ("ECI"), a company controlled by defendant Leek, in exchange for ECI's assistance in securing multi-million dollar loans for various business ventures. A number of the developers (but not all) also entered into written agreements with ECI for the same purpose. The developers received assurances that the monies they paid as so-called loan commitment fees would be refunded if the loans did not close within a specified period of time.
 
 
 4
 When the loans did not close by the dates originally promised, defendants contacted the developers, by telephone and telecopier, to explain the delay. Subsequent proposed closing dates came and went with little more than hollow assurances by defendants that the loans were forthcoming. None of the loans ever closed, and defendants kept the loan commitment fees from most of the developers.
 
 
 5
 Several of the developers contacted the Federal Bureau of Investigations ("FBI"), complaining that they had been subjected to a fraudulent loan-funding scheme. Eventually, the FBI executed a search warrant at ECI's offices, and seized a considerable amount of evidence which later formed the foundation for a 38-Count federal indictment, charging defendants with conspiracy to defraud under 18 U.S.C. § 371; wire fraud under 18 U.S.C. § 1343; inducing interstate travel as part of a scheme to defraud under 18 U.S.C. § 2314; money laundering under 18 U.S.C. § 1956(a)(1)(A) and 18 U.S.C. § 1957; and aiding and abetting as to each substantive count in the indictment under 18 U.S.C. § 2. The indictment also contained two criminal forfeiture counts under 18 U.S.C. § 982. A jury convicted all the defendants-appellants, except for Patt, of conspiracy to defraud and all of the substantive offenses. Patt was convicted only of several counts of wire fraud and related aiding and abetting charges; the district court dismissed the other charges against him. Without objection, the district court granted motions for judgments of acquittal of two of the indicted co-conspirators, David G. White and Eduardo Lageyre, Jr.
 
 
 6
 The district court sentenced the defendants to the following terms of incarceration: Leek, 121 months; D. Jaramillo, 188 months; Simmons, 97 months; J. Jaramillo, 151 months; and Patt, 33 months. Each of the defendants filed a timely notice of appeal.
 
 
 7
 II. Inducing Interstate Travel as Part of a Scheme to Defraud.
 
 
 8
 We begin with the government's concession that its trial evidence was insufficient to support any of the convictions for inducing a victim of fraud to travel in interstate commerce under 18 U.S.C. § 2314. Government's brief at vii. Based upon this concession, we reverse the convictions of Leek, D. Jaramillo, Simmons, and J. Jaramillo for this offense.
 
 
 9
 III. The Grand Jury Proceeding Was Not Improperly Tainted.
 
 
 10
 We next turn to an argument raised by defendants Leek, D. Jaramillo, and J. Jaramillo, namely that their convictions must be set aside and that the indictment charging them must be dismissed, because the grand jury process was "tainted." As J. Jaramillo explains:
 
 
 11
 The transcript of the Grand Jury testimony of the Government's proposed expert witness, Charles Lamb, conclusively demonstrated that he had signed letters of credit which were delivered to one of the grand jurors. The Government neither explored this conflict of interest, which was revealed in the presence of all grand jurors, nor did it excuse this juror resulting in substantial prejudice to the accused, violating [defendant's] due process rights, and casting "grave doubt" as to whether the decision to indict was free from the substantial influence of this violation.
 
 
 12
 The district court rejected this argument, and denied defendants' respective motions to dismiss the indictment. We review the district court's ruling for an abuse of discretion. United States v. Overmeyer, 899 F.2d 457, 465 (6th Cir.), cert. denied, 498 U.S. 939 (1990). To warrant reversal, defendants must demonstrate "a long standing pattern of prosecutorial misconduct before a grand jury and actual prejudice[ ]." United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990) (emphasis added), cert. denied, --- U.S. ----, 114 S.Ct. 134 (1993). Because defendants have failed to demonstrate either a longstanding pattern of prosecutorial misconduct before a grand jury or actual prejudice, we find this claim to be without merit, and hold that the district court did not abuse its discretion when it refused to dismiss the indictment against these three defendants on these grounds.
 
 
 13
 IV. Sufficiency of the Evidence.
 
 
 14
 Defendants Leek, Simmons, J. Jaramillo, and Patt, all argue that the government's trial evidence was insufficient to convict them. In reviewing this claim, we examine the evidence in the light most favorable to the government in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). We evaluate the evidence de novo in order to determine whether the district court erred in denying defendants' motions for acquittal. United States v. Busacca, 936 F.2d 232, 239 (6th Cir.), cert. denied, 502 U.S. 985 (1991).
 
 
 15
 A. Conspiracy Convictions.
 
 
 16
 We begin with the conspiracy convictions. Leek, Simmons, and J. Jaramillo were convicted of conspiracy pursuant to 18 U.S.C. § 371 (" § 371"). To establish a violation of § 371, the government must prove beyond a reasonable doubt that there was an agreement between two or more parties to act together to commit an offense, and that an overt act was (or overt acts were) committed by (at least) one of the conspirators in furtherance of the conspiracy. United States v. Milligan, 17 F.3d 177, 182 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 211 (1994). Here, the indictment charged a conspiracy to devise a scheme to defraud, and to launder the proceeds derived from that scheme.
 
 
 17
 We need not address each of the defendants' respective arguments about why he or she was not involved in the conspiracy. The record evidence establishes that defendants were in regular contact with each other for the purpose of coordinating the activities charged in the indictment. Such evidence tends to support the conclusion that defendants had agreed to engage in a scheme to defraud. Milligan, 17 F.3d at 183 (explaining that "[a] tacit or mutual understanding among conspirators is sufficient to show conspiratorial agreement, and conspiracy may be inferred from relevant and competent circumstantial evidence, such as the acts of the conspirators themselves"). The evidence also establishes that defendants signed or sent, or both, numerous fraudulent documents, that defendants made numerous misrepresentations to would-be borrowers, that the defendants obtained monies as a result of these activities, and that defendants engaged in financial transactions with those funds which were designed to promote the fraudulent scheme. All of these overt actions were undertaken in furtherance of the conspiracy. Id. at 182. Thus, the conspiracy convictions of Leek, Simmons, and J. Jaramillo are affirmed.
 
 
 18
 B. Wire Fraud Convictions.
 
 
 19
 We next consider the wire fraud convictions. All of the defendants who question the sufficiency of the evidence were convicted of wire fraud in violation of 18 U.S.C. § 1343 (" § 1343"). To prove a violation of § 1343, the government had to establish that each of the defendants: (1) was engaged in a scheme to defraud, (2) had an intent to defraud, and (3) used an interstate electronic communication in furtherance of the scheme. United States v. Smith, 39 F.3d 119, 122 (6th Cir.1994). Fraudulent interstate electronic communications need not have been directly or personally performed by the defendant in order for there to be a violation of § 1343; it is sufficient for the purposes of establishing a violation of that statute that a defendant knew that the use of interstate wire services was a reasonably foreseeable consequence of the scheme to defraud in which he or she was involved. United States v. Griffith, 17 F.3d 865, 874 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 149 (1994). We will review the claims each defendant makes on appeal.
 
 
 20
 Leek. In challenging his conviction on the wire fraud counts, Leek raises three arguments. First, he explains, his conviction on counts 3-7, 9-12, 14-16, 19, and 23-27 (each a particular act of wire fraud) was improper because those counts involve only the acts of co-conspirators. According to Leek, he could have been found guilty of committing the wire fraud charged in these counts only upon a theory of co-conspirator liability. We agree that the conviction for the conspiracy supports Leek's conviction on these substantive counts, because the acts of wire fraud were reasonably foreseeable and undertaken in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 647 (1946); United States v. Lawson, 872 F.2d 179, 182 (6th Cir.), cert. denied, 493 U.S. 834 (1989). Having affirmed Leek's conspiracy conviction, we therefore affirm his wire fraud conviction on the counts he challenges. Lawson, 872 F.2d at 182.
 
 
 21
 Second, Leek argues that his conviction for count 22, which involved a wire transfer of funds by John Carson to an ECI bank account, was improper, because Carson did not engage in any illegal activity in making the transfer. As Leek explains, "Mr. Carson is not alleged to be a co-conspirator and his use of a wire transfer could not possibly have been done with intent to defraud or to further a scheme to defraud." Leek misses the point. The transfer need not have involved illegal activity or criminal intent on the part of the individual making the transfer. Nor must Leek have made the wire transfer himself in order to be held criminally liable therefor. The government adduced sufficient evidence to establish that Leek's unlawful actions foreseeably caused Carson to make the wire transfer, and that the transfer was thus part of the scheme to defraud. Griffith, 17 F.3d at 874 (citing United States v. Campbell, 845 F.2d 1374, 1382 (6th Cir.), cert. denied, 488 U.S. 908 (1988)). We will not disturb the jury's verdict on these grounds.
 
 
 22
 Third, Leek contends that the remaining charged counts of wire fraud did not involve any unlawful communication. Leek concedes, however, that his convictions on these counts can be sustained if a related scheme to defraud has been established. Because the evidence of a scheme to defraud has been overwhelmingly established by the government's evidence, we find this last claim to be without merit.
 
 
 23
 Simmons. Simmons asserts that all of the government's evidence against him is insufficient to support a wire fraud charge conviction. Simmons's approach, however, is misdirected. At trial, the government introduced nearly twenty separate pieces of evidence implicating Simmons in the crimes for which he was convicted. Simmons sent and received letters and telecopier transmissions, and made and received telephone calls in furtherance of the bogus loan-funding scheme. We hold that, when viewed in the light most favorable to the government, a rational trier of fact could have convicted Simmons of wire fraud. Jackson, 443 U.S. at 319.
 
 
 24
 J. Jaramillo. J. Jaramillo contends that the jury could not properly convict her of wire fraud. She argues that she was convicted of wire fraud only through an "impermissible bootstrapping" from the conspiracy count. In essence, her claim stands or falls on her involvement in the conspiracy. J. Jaramillo argues that the substantive wire fraud offenses were completed before she joined the conspiracy. The evidence, however, shows that at least by July 1991, J. Jaramillo, along with D. Jaramillo, had personally guaranteed, on behalf of their company, Myco Investments, Inc. ("Myco"), that the loan commitment fees would be refunded. We agree with the government that, based upon such evidence, a rational jury could properly conclude that, no later than July 1991, J. Jaramillo had joined the conspiracy, and that she was criminally liable for wire communications made subsequent to that time.[1]
 
 
 25
 Patt. Patt argues that he did not have knowledge that the materials contained in the interstate communications were false. Therefore, he maintains, he lacked an intent to defraud the potential borrowers, and his conviction for wire fraud should be reversed. We understand Patt's argument to consist of an attempt to marshal the evidence in the record to demonstrate that he did not have knowledge of the fraud or an intent to defraud. The question before us, however, is not, as Patt seems to think, whether a jury could have believed Patt's testimony and found him not guilty of the charges of which he was convicted. Rather, the question is whether any reasonable jury could have convicted him on the evidence presented at trial. We conclude that it could, and that Patt's convictions on the wire fraud counts must be affirmed.
 
 
 26
 C. Money Laundering Convictions.
 
 
 27
 We turn now to the money laundering convictions. Leek, Simmons, and J. Jaramillo all challenge the sufficiency of the evidence supporting their money laundering convictions under 18 U.S.C. § 1956(a)(1)(A) (" § 1956"). To prove a defendant guilty of violating § 1956, the government must prove: (1) the existence of a financial transaction; (2) use of funds which came from a specified unlawful activity; (3) knowledge that the money came from such unlawful activity; and (4) intent to promote the carrying on of such activity. United States v. West, 22 F.3d 586, 590-591 (5th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 584 (1994).
 
 
 28
 With respect to the § 1956 convictions, the government has clearly adduced sufficient evidence from which a jury could legitimately hold defendants criminally liable. The record evidence established that funds were derived from defendants' wire fraud--a specified unlawful activity[2]--and that defendants had knowledge that the funds were so derived. The record evidence further demonstrated that not only did the developers engage in financial transactions as a result of the defendants' scheme to defraud, but also that defendants engaged in financial transactions, including wire transfers from ECI bank accounts to Myco bank accounts, in order to divide the proceeds from, and to promote the unlawful scheme.
 
 
 29
 D. Monetary Transactions in Property Derived From Unlawful Activity.
 
 
 30
 Leek, Simmons, and J. Jaramillo assail their convictions under 18 U.S.C. § 1957 (" § 1957") for engaging in monetary transactions in property derived from specified unlawful activity. The elements of a § 1957 charge are that: (1) the defendant knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew that the transaction involved criminally-derived property;[3] (3) the criminally derived property had a value in excess of $10,000; (4) the criminally derived property was derived from specified unlawful activity; (5) the monetary transaction took place within the United States, or within its jurisdiction, or took place outside the United States; and (6) the defendant is a United States person. 18 U.S.C. § 1957(a), (d); see Griffith, 17 F.3d at 878.
 
 
 31
 The government's evidence clearly showed that J. Jaramillo was guilty of a substantive violation of § 1957. The defendants arranged for $400,000 in funds derived from the scheme to defraud, including wire fraud, to be transferred into bank accounts opened by J. Jaramillo, D. Jaramillo, and their son, Lageyre, under Myco's name. On several occasions, these funds, in amounts exceeding $10,000, were transferred out of the Myco account and into other accounts which J. Jaramillo maintained jointly with, in one case, her husband, and in another, Lageyre. In our view, the evidence, though circumstantial, gives rise to an inference sufficient to support the jury's conclusion that J. Jaramillo knowingly engaged in monetary transactions involving criminally-derived property, that she knew the transaction involved property fraudulently received from specified unlawful activity (i.e., wire fraud), and that the value of the criminally derived property exceeded $10,000.[4] See id. The jury could also have concluded the transactions took place within the United States, and that J. Jaramillo was a United States person. 18 U.S.C. § 1957(d)(2); 18 U.S.C. § 2077(2). Thus, we affirm J. Jaramillo's § 1957 money laundering conviction.
 
 
 32
 We also affirm Leek's and Simmons's § 1957 convictions on the grounds of co-conspirator liability. J. Jaramillo's criminal conduct was a reasonably foreseeable part of the criminal conspiracy in which the three were involved. Pinkerton, 328 U.S. at 647; United States v. Walton, 908 F.2d 1289, 1299 (6th Cir.), cert. denied sub nom. Mitchell v. United States, 498 U.S. 906, 111 S.Ct. 273 (1990).
 
 
 33
 V. Absence of In-Court Identification.
 
 
 34
 Simmons and D. Jaramillo each contend that the district court should have granted their motions for acquittal because the government did not provide in-court identification of them as the individuals named in the indictment. While it is a fundamental requirement of all criminal proceedings that, in order to secure a conviction, a defendant be proved to have been the one who engaged in the allegedly unlawful conduct, in-court identification is not essential so long as the identity of the accused has been proved by adequate circumstantial evidence. United States v. Doherty, 867 F.2d 47, 67 (1st Cir.), cert. denied, 492 U.S. 918 (1989). A defendant's identity may be inferred from the totality of the trial evidence, as well as from the course of the trial proceedings. See United States v. Alexander, 48 F.3d 1477, 1490 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 210 (1995); United States v. Cooper, 733 F.2d 91, 92 (11th Cir.1984); United States v. Fenster, 449 F.Supp. 435, 441 (E.D.Mich.1978).
 
 
 35
 Neither Simmons nor Jaramillo seriously maintains that he was not the same individual named in the indictment. Simmons was clearly and unequivocally identified by his own counsel in opening statement as being the attorney who, according to the government, was in the law practice with David White. As became abundantly clear at oral argument of this case, Simmons's claim in regard to the lack of an in-court identification is actually a claim that we must reverse his conviction because of a lack of direct evidence of his unlawful activity. However, it is axiomatic that guilt beyond a reasonable doubt may be established through circumstantial evidence. The record in this case contains sufficient circumstantial evidence to support the jury's verdict of guilt.
 
 
 36
 D. Jaramillo was tried along with his wife, Lageyre (his wife's son), Simmons (who held himself out as Myco's attorney), and White (Simmons' associate). Most, if not all of these individuals were personally acquainted with D. Jaramillo, and the record contains no hint of which we are aware that the D. Jaramillo who was convicted by a jury of his peers, and who now brings this appeal, was not, in point of fact, the self-same D. Jaramillo who engaged in the charged conduct. The totality of the evidence and the course of the trial proceedings support the jury's conclusion that the government did, albeit circumstantially, establish the defendants' identity beyond a reasonable doubt. Cooper, 733 F.2d at 92.
 
 
 37
 VI. Sentencing Claims.
 
 
 38
 Obstruction of Justice. D. and J. Jaramillo appeal a two-level sentence enhancement imposed by the district court under U.S.S.G. § 3C1.1 (" § 3C1.1") for obstruction of justice.[5] On sentencing matters, we review the district court's findings of fact for clear error. 18 U.S.C. § 3742(e) (1988); United States v. Morrison, 983 F.2d 730, 732 (6th Cir.1993). We review de novo, but with due deference, the district court's application of the guidelines to the facts. See id.
 
 
 39
 The district court imposed a two-level increase under § 3C1.1 to the Jaramillos' sentences because it believed that they had attempted to obstruct justice during the course of the trial. While the trial was under way, the Jaramillos provided the prosecution with copies of an exhibit list and amended witness lists. Five of the defense exhibits were produced by the Jaramillos in compliance with a standing discovery order. Included among these exhibits were certain agreements purportedly between Myco and the government of Fiji which granted Myco an "international power of attorney," and authorized Myco to obtain "prime bank debentures" and "standby letters of credit" on its behalf. Several of the documents were executed by "M. Qionibaravi as Finance Minister for Fiji," and were witnessed by "Herbert H. Haberl as the Jamaican Consulate from Vienna, Austria." Though these documents bore all the indicia of being bona fide, when the prosecution sought to verify their authenticity, it discovered that they were fraudulent. The prosecution reported to the district court that Fijian embassy officials had indicated that the stationary was not genuine, that the government of Fiji was not familiar with Myco, that it was not the policy of the government of Fiji to enter into such agreements, and that M. Qionibaravi had been dead for several years by the time these documents showed they had been signed. The prosecution submitted a letter from the government of Fiji to the district court as evidence that the documents tendered by the Jaramillos were false and fraudulent. Based upon these representations, the district court imposed the sentencing enhancements already mentioned.
 
 
 40
 We find that the Application Notes to § 3C1.1 answer the Jaramillos' claim. Application Note 3(c) provides:
 
 
 41
 3. The following is a non-exhaustive list of examples of the type of conduct to which this enhancement [for obstructing or impeding the administration of justice] applies:
 
 
 42
 (c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding.
 
 
 43
 U.S.S.G. § 3C1.1, Commentary, Application Note 3 (1993 and 1994). While the Jaramillos advert to a number of judicial decisions which they believe exempt them from an enhancement for obstruction, the language of the Application Note, and its bearing on the enhancement the Jaramillos received, could not be clearer. The Jaramillos produced--and do not earnestly maintain otherwise--a "false, altered, or counterfeit document or record during a ... judicial proceeding." The documents were clearly material, United States v. Crousore, 1 F.3d 382, 385 (6th Cir.1993) (citing U.S.S.G. § 3C1.1, Commentary, Application Notes 4, 5), otherwise the Jaramillos would not have sought to introduce them as evidence in their defense.[6] So saying, we affirm the two-level enhancement imposed by the district court.
 
 
 44
 Ringleader Enhancement. Simmons and J. Jaramillo argue it was improper for the district court to impose sentence enhancements under U.S.S.G. § 3B1.1 (" § 3B1.1") for being a leader or supervisor of criminal activity. We consider their arguments in turn.
 
 
 45
 Simmons maintains that since indicted co-conspirator White was acquitted, the enhancement he received under § 3B1.1, for being a leader or supervisor, was improper. In Simmons's view, in order for the enhancement to be warranted, a defendant must "lead" or "supervise" an individual who has been independently found criminally liable for the acts he was "led" into or "supervised" while committing.
 
 
 46
 Simmons argues that the sentencing issue he raises is resolved by United States v. Carroll, 893 F.2d 1502, 1509 (6th Cir.1990), where we held that "enhancement pursuant to § 3B1.1 requires the participation of at least two [criminally] culpable individuals [i.e., the individual receiving the enhancement plus one other] so that leadership of some criminal enterprise or organization, can be claimed."[7] According to Simmons, Carroll 's dictates could not have been met because White, who was acquitted of the charges contained in the indictment, could not have been "criminally culpable" for the purposes of the § 3B1.1 enhancement. The government takes exception to this reasoning. Without disputing that Carroll is the law of this Circuit, the government argues that White's acquittal should not be construed so as to preclude a finding that he was "criminally culpable" for the purposes of imposing the § 3B1.1 enhancement against Simmons. Neither Simmons's nor the government's argument is without flaw.
 
 
 47
 The district court, as Simmons points out, took the view that Simmons's criminal leadership of White merited the two-level increase of § 3B1.1. And the district court, as Simmons also points out, did grant White a judgment of acquittal. That judgment in White's favor, as a plain reading of the language of § 3B1.1 (and a fair reading of Carroll ), should make clear, does not, strictly speaking, preclude the imposition of enhancement against Simmons for his leadership or supervision of White. We cannot, however, overlook the fact that while the district court might have found that White was criminally culpable for the charged conduct when it decided that Simmons had "led" or "supervised" him, it made no such finding. Neither the Presentence Investigation ("PSI") Report nor the district court's judgment against Simmons contains a finding that Simmons, whose enhancement was based on his leadership or supervision of White, had "led" or "supervised" someone (White) who was criminally responsible. Nor does either the PSI Report or the judgment against Simmons contain a finding which would explain why White, despite his acquittal, was nevertheless criminally responsible for charged conduct. We would ordinarily remand Simmons' § 3B1.1 enhancement to the district court for further findings. After a thorough review of the record in this case, however, we think a remand for further findings is unnecessary. In our view, the record evidence does not at all support Simmons' § 3B1.1 enhancement. Therefore, on remand, we instruct the district court to resentence Simmons without the § 3B1.1 enhancement.
 
 
 48
 J. Jaramillo takes exception to the district court's imposition of a four-level sentence enhancement, pursuant to § 3B1.1, on her sentence for the supervision of five or more participants involved in criminal activity.[8] She claims that the district court did not identify the participants they were said to organize or lead. J. Jaramillo is mistaken on this score. The district court found that a preponderance of the evidence established that J. Jaramillo controlled Simmons, White, de Aquino, Haberl, Lageyre, and Julio Liberato. Thus, the only question truly presented by J. Jaramillo's attack on her ringleader enhancement is whether the individuals over whom she exercised control were, themselves, criminally responsible with respect to the charged criminal activity. Carroll, 893 F.2d at 1509.
 
 
 49
 We have reviewed the record and have found no clear indication that the district court found that J. Jaramillo's supervisees were criminally culpable of charged conduct. In the absence of an explicit finding by the district court to the effect that a preponderance of the evidence supported the conclusion that J. Jaramillo's supervisees were criminally culpable, there is, of course, no finding for us to affirm.[9] Our holding as to J. Jaramillo on this question applies also to D. Jaramillo.
 
 
 50
 Loss Calculation. Patt contends that the district court erred in making its loss calculation when it imposed a sentence enhancement under U.S.S.G. § 2F1.1 (" § 2F1.1"). We have explained that a defendant in Patt's situation bears the burden of persuading us that the district court's evaluation of the loss was inaccurate and outside the realm of acceptable computations. United States v. Jackson, 25 F.3d 327, 330 (6th Cir.) (citing U.S.S.G. § 2F1.1, Commentary, Application Note 8), cert. denied, --- U.S. ----, 115 S.Ct. 344 (1994)). In our view, Patt has sustained this burden.
 
 
 51
 Section 2F1.1 provides that loss attributable to fraud is to be calculated not only on sums related to the convicted offenses, but also on amounts of loss attributable to other acts which "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). As the Application Notes to § 2F1.1 make plain, "if an intended loss that the defendant was attempting to inflict can be determined, this figure should be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, Commentary, Application Note 7 (1993). "Loss" is defined as "the value of the property taken, damaged, or destroyed." U.S.S.G. § 2B1.1, Commentary, Application Note 2.
 
 
 52
 The district court calculated the loss attributable to Patt for purposes of sentencing at $1,065,750. Because Patt was convicted only on discrete counts of wire fraud, and was acquitted of the conspiracy charge, this calculation warrants vacation of Patt's sentence. Jackson, 25 F.3d at 330. Despite the fact that we do not have Patt's PSI Report before us (it was somehow left out of the joint appendix[10]), we are of the view that the calculation of loss attributable to Patt for purposes of sentencing was not (as it should have been) limited to those offenses for which he was convicted. Thus, we vacate Patt's sentence, and remand for re-sentencing. Without announcing any broad rule applicable to other cases, we instruct the district court only to include the loss attributable to REB Real Estate Concepts, Inc., Southeast Hospitality, Inc., and Pandamonium, Inc.[11]
 
 
 53
 Acceptance of Responsibility. Finally, we consider Leek's claim that the district court committed error when it did not afford him a downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1 (" § 3E1.1"). Whether Leek's statements constitute "an acceptance of responsibility" is a question of fact, which we will reverse only if clearly erroneous. Crousore, 1 F.3d at 386. Because the sentencing court is in a unique position to evaluate a defendant's acceptance of responsibility, its determination is entitled to great deference on review and should not be disturbed without foundation. See United States v. Donathan, 65 F.3d 537, 541-542 (6th Cir.1995) (referring to U.S.S.G. § 3E1.1, Commentary, Application Note 5). We thus review the sentencing court's determination for clear error. Id. at 542 (citing United States v. Chalkias, 971 F.2d 1206, 1216 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992)).
 
 
 54
 Leek submitted a statement to the federal probation officer responsible for preparing his presentence report in which he stated that he "accept[ed] full responsibility for the loss of funds," and that he was "prepared to take complete responsibility" for the "financial, social, and professional damage" suffered by his victims. The district court did not accept Leek's statement as an acceptance of criminal responsibility. Rather, the district court found that Leek's statement was only a concession that he was involved in "a misadventure, [and] a regrettable occurrence." The district court's reasons for not granting Leek a reduction for acceptance of responsibility were not clearly erroneous. Id. Because Leek did not accept criminal responsibility for his conduct, he was not entitled to a downward departure under § 3E1.1.
 
 
 55
 VII. Conclusion.
 
 
 56
 For the foregoing reasons, we AFFIRM defendants' convictions on all counts except that relating to inducing interstate travel as part of a scheme to defraud under 18 U.S.C. § 2314, but VACATE their sentences, and REMAND for re-sentencing consistent with this opinion.[12]
 
 
 
 *
 The Honorable David D. Dowd, Jr. United States District Judge for Northern District of Ohio, sitting by designation
 
 
 [1]
 J. Jaramillo attempts to evade criminal liability for those offenses which she says were committed before she could have joined the conspiracy, specifically the wire fraud charges contained in Counts 3, 8-17, and 21-22. She maintains that she cannot be held liable for substantive offenses committed and completed before she joined the conspiracy, and cites United States v. Harrell, 737 F.2d 971, 981 (11th Cir.1984), cert. denied, 470 U.S. 1027 (1985), as support for her position. We need not address this contention because we have concluded that a reasonable jury could have found that J. Jaramillo was involved in the conspiracy prior to the date of any of the particular acts of wire fraud for which she was convicted
 
 
 [2]
 Wire fraud is a "specified unlawful activity." § 1956(a)(1)(A) defines "specified unlawful activity" as "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title...." Wire fraud is one of the acts or activities constituting an offense listed in 18 U.S.C. § 1961(1); it is not an indictable act under subchapter II of chapter 53 of title 31
 
 
 [3]
 The term "criminally derived property" is defined in § 1957 to mean any property constituting ... proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2)
 
 
 [4]
 J. Jaramillo contends that she has no criminal responsibility for the acts of Myco, and relies on a remark by the trial court in support of her position. In an exchange with counsel, the trial court explained that Jaramillo "doesn't have any criminal responsibility for the conduct of MYCO." Jaramillo misunderstands the nature of the remark. While Jaramillo cannot be punished for Myco's crimes, still she can be held liable for her own actions, which also happen to be attributable to Myco
 5 U.S.S.G. § 3C1.1 provides that: "If the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels. U.S.S.G. § 3C1.1 (1994).
 
 
 [6]
 J. Jaramillo's assertion at oral argument that, of course, she would not have submitted the documents had she known they were fraudulent is not well taken. As the district court noted, D. Jaramillo played a role in the documents' creation, and J. Jaramillo does not argue to the contrary. As we have already explained, we are bound to give great deference to the district court's factual findings on sentencing matters, reviewing them only for clear error. 18 U.S.C. § 3742(e); Morrison, 983 F.2d at 732. Based upon the record before us, we cannot say that the district court's findings as they relate to J. Jaramillo's knowledge of the fraudulent nature of the documents were clearly erroneous
 7 U.S.S.G. § 3B1.1(c), the exact provision under which Simmons's enhancement was imposed, permits a two-level sentence enhancement if a defendant was a leader or supervisor of a criminal activity. The Application Note to that provision provides that: "A participant is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, Commentary, Application Note 1 (1993 and 1994). We draw no distinction between the term "criminally responsible," as used in the Guidelines, and the term "criminally culpable" as used in Carroll, 893 F.2d at 1509.
 8 U.S.S.G. § 3B1.1(a), the specific Guidelines provision under which J. Jaramillo's ringleader enhancement was assessed, provides that: "Based on the defendant's role in the offense, increase the offense level as follows: (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a) (1994).
 
 
 [9]
 We think that it should go without saying that the imposition of the enhancement as to J. Jaramillo, and likewise as to Simmons, will not be allowed to stand on the mere assumption that the supervisees were criminally culpable
 
 
 [10]
 It has not escaped our attention that the government failed timely to comply with our order at oral argument that it provide supplemental briefing in this case to assist us in combing through the voluminous and ill laid-out joint appendix
 
 
 [11]
 Because we are remanding for re-sentencing, we instruct the district court to review the sentences of restitution to be certain that, in light of Hughey v. United States, 495 U.S. 411 (1990), United States v. Guardino, 972 F.2d 682 (6th Cir.1992), and United States v. Jewett, 978 F.2d 248 (6th Cir.1992), they accord with the statutes and the Guidelines
 
 
 [12]
 Counsel for the Jaramillos have filed a motion for the appointment of counsel under the Criminal Justice Act. The motion seeks reimbursement for the expenses counsel have incurred in pursuing this appeal (i.e., airfare, hotel, and copying costs). The motion does not seek attorney's fees. We have not yet ruled on this motion
 At the time that the district court denied a similar motion, the forfeiture of the Jaramillos' property had not been finalized. It now has. Because their property has been forfeited, the Jaramillos may at this time qualify for in forma pauperis status. We, therefore, request a new ruling from the district court on the appointment of counsel question.