**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dana Ray MORRISON, Defendant–Appellant.**

**No. 92–5033.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1992.

Decided Jan. 12, 1993.

John MacCoon, Asst. U.S. Atty. (argued and briefed), Jerry G. Cunningham, U.S. Atty., Chattanooga, TN, for plaintiff-appellee.

R. Dee Hobbs, Chattanooga, TN (argued and briefed), for defendant-appellant.

Before: KEITH, KENNEDY, and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

In this case, Defendant–Appellant Dana Ray Morrison pled guilty to receipt and possession of a firearm by a felon. Sentenced under the federal guidelines, he appeals the disallowance of two mitigating factors, possession of a firearm solely for sport and acceptance of responsibility, that would have reduced the sentence imposed. Though the district court's finding that the firearm was not used solely for sporting purposes is not clearly erroneous, we va-cate the sentence and remand for resentencing since the finding that Morrison had not accepted responsibility was based, at least in part, on inappropriate considerations.

## I. The Case

Morrison was convicted on August 30, 1988, of two felonies. On November 30, 1990, he was found in possession of a loaded, six-inch, Rossi .357 Magnum revolver that he had purchased on September 1, 1990. On May 14, 1991, he was indicted for receipt and possession of a firearm by a felon in contravention of 18 U.S.C. § 922(g)(1) (1988).

On July 19, 1991, Defendant entered a plea agreement with the government. The United States District Court for the Eastern District of Tennessee accepted this agreement on December 16, 1991, at which time it imposed a sentence of twenty-two months, followed by three years of supervised release, and a fine of $1,800. The prison sentence was within the range established by the United States Sentencing Commission in its *Guidelines Manual* (Nov. 1991) [hereinafter *Guidelines*].

Defendant sought a reduction in sentence on the basis that: (1) the firearm was used solely for lawful sporting purposes, *see Guidelines* § 2K2.1(b)(2); and (2) he had accepted responsibility for his actions, *see Guidelines* § 3E1.1. The court rejected Defendant's arguments. Defendant timely appealed, claiming that the court should have granted him the reductions.

## II. Standard of Review

### A. Generally

Appellate review of sentences under the federal sentencing guidelines is generally governed by 18 U.S.C. § 3742 (1988):

(e) **Consideration.**—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and is unreasonable ...

. . . . .

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

**B. The "Solely for Sporting Purposes" Issue**

■ Determination of whether the .357 Magnum in this case was used solely for sporting purposes is a question of fact and as such is to be reviewed under the clearly erroneous standard. *See United States v. Lorenzo*, 951 F.2d 350 (6th Cir.1991).

**C. The Acceptance of Responsibility Issue**

■ Regarding acceptance of responsibility, the standard of review is discussed in Application Note Five to *Guidelines* § 3E1.1(a):

The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

*See United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989) (accepting and applying this standard). Generally a question of fact, the trial court's determination of whether a defendant has accepted responsibility normally enjoys the protection of the clearly erroneous standard, and will not be overturned unless it is without foundation. *See id.* (citing and accepting relevant portion of *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989)); *United States v. Lassiter*, 929 F.2d 267, 270 (6th Cir.1991); *United States v. Christoph*, 904 F.2d 1036, 1041 (6th Cir.1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991).

■ Questions of law, however, such as the appropriate application of this guideline to a particular set of facts, are subject to *de novo* review. *See United States v. Wilson*, 920 F.2d 1290, 1294 (6th Cir.1990);

*United States v. Brewer*, 899 F.2d 503, 506 (6th Cir.1990).

**III. The "Solely for Sporting Purposes" Reduction**

■ In support of his claim that the firearm was used solely for sporting purposes, Defendant presents the following facts. First, before purchasing the handgun, Defendant allegedly had a discussion with Joe Castle, who issued Defendant a hunting license, concerning what type of handgun could be used for hunting. Defendant claims that he followed Castle's suggestion in purchasing a .357 revolver. Second, he was found in possession of the gun shortly after an alleged hunting trip (during deer hunting season) with Marcus Vanhooser. Defendant asserts that about forty to forty-five minutes after their hunting expedition, they stopped at a car wash to clean the truck owned by Vanhooser. Police stopped the truck because Vanhooser was driving with a suspended license. A patdown search for weapons of the two individuals revealed the .357 revolver in question on the Defendant's person.

The government counters with the following facts. First, the handgun had no scope. Second, the gun was found loaded in a concealed shoulder holster. Third, according to the police report, the stop of the truck and the arrest of Defendant took place at 10:00 p.m., about four to five hours after nightfall. Fourth, at the time of the arrest, Defendant claimed not to have been hunting, but to have been working on the truck just prior to the arrest. Fifth, no hunting paraphernalia was ever found in the truck or on Defendant's person. Sixth, Vanhooser, the purported hunting companion, was not in possession of any firearm.

■ The trial court's determination that Defendant did not possess the .357 revolver solely for sporting (hunting) purposes is not clearly erroneous. As a preliminary matter, Defendant has the burden of proving, by a preponderance of the evidence, that a reduction in the guidelines offense level is warranted. *United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir.

1990); *United States v. Potter,* 956 F.2d 1164 (6th Cir.1992). Thus, the government need not prove that the revolver was used for illegal purposes. Rather, Defendant must prove that the firearm was used solely for sporting purposes.

In making the factual determination whether the gun was used solely for sporting purposes, Application Note 10 under *Guidelines* § 2K2.1(b)(2) directs the trial court to look to the surrounding circumstances, which include: "the number and type of firearms, the amount and type of ammunition, [and] the location and circumstances of possession and actual use...." In this case, it was reasonable for the trial court to conclude that a Rossi .357 Magnum, without a scope, carried in concealed fashion in a shoulder holster, is not possessed "solely for lawful sporting purposes or collection." *Guidelines* § 2K2.1(b)(2). Though Defendant maintained he would not have even used the weapon in self-defense, the trial court could properly weigh the credibility of Defendant's contentions against him in reaching the factual conclusion from the surrounding circumstances that the gun was not possessed solely for the purposes of hunting. *See* 18 U.S.C. § 3742(e) (1988).

Furthermore, it is not clearly erroneous to assume that Defendant was not hunting immediately prior to his arrest. Defendant's credibility on this issue was called into question when he stated that he was arrested about forty to forty-five minutes after he and Vanhooser finished hunting. The police report puts the time of arrest at about 10:00 p.m.—four to five hours after sunset. This fact puts an obvious strain on Defendant's story, unless he possessed an infrared scope, which he did not. It is not unreasonable to believe the police report over and above Defendant's testimony, particularly since no hunting equipment was found in the truck or on Defendant's person, and since Vanhooser, his hunting partner, did not have a gun at the time of the arrest.

The fact that no evidence was presented to refute the allegation that Defendant only used the .357 Magnum for hunting purposes does not upset the trial court's conclusion. In weighing Defendant's credibility against reasonable inferences from the facts presented, the trial court reached a conclusion that is not clearly erroneous.

## IV. The Acceptance of Responsibility Reduction

■ Regarding Defendant's claim that he accepted responsibility for his actions, he asserts that he was candid about his actions, was cooperative with the authorities, and pleaded guilty.

The government responds with the fact that, subsequent to Defendant's release on a $10,000 property bond in this case, he was arrested for attempting to steal a pickup truck. Furthermore, a probation officer found him in constructive possession of other firearms. The weapons were found in plain view at Defendant's mother's house, which was Defendant's residence. Lastly, Defendant tested positive for the controlled substance, benzodiazepine.

The trial court has the responsibility to determine whether a defendant has met his or her burden of showing acceptance of responsibility by a preponderance of the evidence. *See Lassiter,* 929 F.2d at 270; *Rodriguez,* 896 F.2d at 1032. The *Guidelines* list "voluntary termination or withdrawal from criminal conduct or associations" as a factor to be considered in determining whether a defendant has accepted responsibility for his criminal conduct. *Guidelines* § 3E1.1, Application Note 1(a). A probation officer found Defendant in constructive possession of other firearms (including a fully operational shotgun) after arraignment. It was appropriate for the trial court to weigh this against Morrison in determining whether he had accepted responsibility.

■ The district court also counted Morrison's attempted theft as a factor against him, and may have also counted the positive drug test against him. This poses the question whether criminal activity committed after indictment/information but before sentencing, which is wholly distinct from the crime(s) for which a defendant is being sentenced, can be properly consid-

ered when determining whether a two-level acceptance of responsibility reduction is in order. Some might argue that a defendant can recognize and affirm acceptance of personal responsibility for certain criminal activity while engaging in other criminal activity. On the other hand, it might be argued that one who has truly accepted responsibility for a crime against society will not commit further crimes, period. The former view analyzes acceptance of responsibility on a case-by-case basis, while the latter view understands it to apply to the defendant's entire criminal disposition—either the defendant is no longer of a criminal disposition, or he still is.

Federal case law does not provide substantial support for either point of view. Appellee cites two cases to support the proposition that "continuing criminal activity [of any sort] by the defendant makes the acceptance of responsibility reduction inappropriate": *Lassiter*, and *United States v. Snyder*, 913 F.2d 300 (6th Cir.1990), *cert. denied*, 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991). In both of these cases, however, the "continuing criminal activity" was of the same type as the underlying offense. To the same effect is the Sixth Circuit case of *United States v. Reed*, 951 F.2d 97 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 409 (1992), where we affirmed the district court's refusal to give an acceptance of responsibility reduction. In that case, the defendant, while in jail pending sentencing for credit card fraud, engaged in further fraud from a jail telephone. *See also United States v. Jessup*, 966 F.2d 1354, 1356 (10th Cir.1992) (acceptance of responsibility reduction denied where defendant, who had been arrested and indicted under the Mann Act, "continued [his] behavior of sexually molesting young boys" while out on bond); *United States v. Olvera*, 954 F.2d 788, 793 (2d Cir.) (acceptance of responsibility reduction denied, in part, where defendant, who was convicted of conspiring to distribute a controlled substance, smuggled a controlled substance into the prison where he was awaiting sentencing), *cert. denied*, —— U.S. ——, 112 S.Ct. 3011, 120 L.Ed.2d 885 (1992); *United States v. Cooper*, 912 F.2d 344, 345–48 (9th Cir.1990) (acceptance of responsibility reduction denied where defendant, charged with fraud, became involved in additional fraudulent activity); *United States v. Wivell*, 893 F.2d 156, 158–59 (8th Cir.1990) (acceptance of responsibility reduction denied where defendant, charged with attempted possession of cocaine with intent to distribute, dealt in cocaine while he was on bond awaiting disposition of the case).

Courts have also upheld district court denials of an acceptance of responsibility reduction which look to criminal conduct related to, but not of the same type, as the underlying offense. *See, e.g., United States v. Barrett*, 890 F.2d 855, 868–69 (6th Cir.1989) (acceptance of responsibility denied where defendant threatened government informant and witness); *United States v. Davis*, 878 F.2d 1299, 1300–01 (11th Cir.) (acceptance of responsibility reduction denied where defendant, charged with conspiracy to possess with intent to distribute cocaine, continued to use drugs while out on bond), *cert. denied*, 493 U.S. 941, 110 S.Ct. 341, 107 L.Ed.2d 330 (1989); *United States v. Scroggins*, 880 F.2d 1204, 1215 (11th Cir.1989) (acceptance of responsibility reduction denied where defendant, charged with postal theft, "had not turned away from the lifestyle that had motivated his offense of conviction," viz., cocaine use), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990).

And courts will uphold denials of an acceptance of responsibility reduction where the pre-sentencing criminal conduct is *both* of the same type *and* otherwise related to the underlying offense. *See, e.g., United States v. Jordan*, 890 F.2d 968, 973–74 (7th Cir.1989) (acceptance of responsibility denied where defendant, charged with possession with intent to distribute cocaine, participated in two separate instances of drug dealing, and used cocaine, while awaiting sentencing).

At least one case is directly on point. In *United States v. Watkins*, 911 F.2d 983 (5th Cir.1990), the Fifth Circuit reviewed a case where the defendant, having pled guilty to passing forged treasury checks

and to possessing treasury checks stolen from the mail, used cocaine while on release pending sentencing. The district court refused to grant the defendant an acceptance of responsibility reduction *solely* because of the drug use. *See id.* at 984. The Fifth Circuit, noting that "there is no direct basis for this interpretation [of the acceptance of responsibility criterion] in the Guidelines themselves or in case law," yet upheld the district court's ruling. *Id.* It concluded that the district court's view was not clearly erroneous because Application Note 1(a) "is phrased in general terms and does not specify that the defendant need only refrain from criminal conduct associated with the offense of conviction in order to qualify for the reduction." *Id.* at 985; *see also United States v. O'Neil,* 936 F.2d 599, 600–01 (1st Cir.1991) (seeming to accept proposition that *any* criminal conduct shows lack of remorse and thus lack of acceptance of responsibility for crime charged).

In contrast to *Watkins* (and *O'Neil*), we consider "voluntary termination or withdrawal from criminal conduct" to refer to that conduct which is related to the underlying offense. Such conduct may be *of the same type* as the underlying offense, as in *Lassiter, Snyder, Reed, Jessup, Olvera, Cooper, Wivell,* and *Jordan;* or may be the *motivating force* behind the underlying offense, as in *Scroggins;* or may be *related to actions toward government witnesses* concerning the underlying offense, as in *Barrett;* or may *involve an otherwise strong link* with the underlying offense, as in *Davis* and *Jordan.* We are persuaded by the rationale that an individual may be truly repentant for one crime yet commit other unrelated crimes.

The opposing rationale was adopted in the dissent to the instant case, which reads, in part: "The issue appears to be whether the questioned conduct 'is inconsistent'

with defendant's statement that I realize I have done what I should not have done—engage in illegal conduct." We would end the sentence, "...—be a felon in possession of a firearm." We hold that acceptance of responsibility, as contemplated by the United States Sentencing Commission, is "acceptance of responsibility *for his offense,*" *Guidelines* § 3E1.1(a) (Nov. 1992) (emphasis added), not for "illegal conduct" generally.[1] Considering unrelated criminal conduct unfairly penalizes a defendant for a criminal disposition, when true remorse for specific criminal behavior is the issue.

In sum, since the district court did consider an inappropriate factor (and may have considered another) in deciding whether Morrison had accepted responsibility for the firearms violation, we VACATE the sentence, and REMAND the case for resentencing so that the district court may properly weigh the factors that remain.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's opinion with the exception of the reversal of the District Court's finding that defendant had not demonstrated an acceptance of personal responsibility for his criminal conduct. I disagree with the panel's interpretation of the purpose of the Acceptance of Responsibility Guideline, U.S.S.G. § 3E1.1, and limitations it places on what behavior may be considered by a district court in applying that Guideline. The panel prohibits the District Court from considering post-arrest, post-guilty plea criminal behavior not similar or related to the crime for which a defendant is convicted. This presupposes that the "legitimate societal interests" referred to in the Background Application Note to section 3E1.1, are limited to encouraging a defendant not to commit the same or similar crimes. In my view, that is too cramped a reading of the purposes of

---

**1.** We note that Section 3E1.1(a) was recently amended, effective November 1, 1992. Section 3E1.1(a) previously read: "If a defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." It now reads: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." While we do not necessarily interpret this amendment as a change from a "criminal disposition" rationale to a "case-by-case" rationale, we find that it helps clarify the issue in a manner that supports our point of view.

encouraging acceptance of responsibility by criminal defendants. It should be open to the sentencing court to conclude that defendants who fail to live within the law after arrest, and especially after they plead guilty or have agreed to plead guilty, have not accepted responsibility for their criminal actions.

The first consideration in favor of a defendant qualifying for accepting responsibility is "voluntary termination or withdrawal from criminal conduct or associations." Application Note 1(a) to U.S.S.G. § 3E1.1. This is broadly written. *United States v. Watkins*, 911 F.2d 983 (5th Cir. 1990) (section 3E1.1 is "phrased in general terms"). It does not include the word "related" before the phrase "criminal conduct," which could quite easily have been done had that been the Sentencing Commission's intent. Instead, the clear import of the language is to include *all* criminal conduct and associations. Inclusion of "associations" as well as conduct corroborates this broad interpretation. By including consideration of whether a defendant continues relationships with criminal confederates, the Sentencing Commission was going beyond limited consideration of whether a defendant was continuing the same or similar criminal conduct.

When the Background Application Note does refer to "related conduct," it does so in defining the conduct for which a defendant is to have accepted responsibility, not in limiting what behavior a sentencing court may consider to determine whether responsibility has been accepted. On the whole, the Commission indicates little limitation on what considerations are legitimate in granting the acceptance of responsibility reduction. The Commission took great pains, especially in the amendment effective November 1, 1991, to indicate that a defendant's decision not to plead guilty should not in all cases prohibit the reduction. Other than that, section 3E1.1 is written inclusively. The list of considerations in Application Note 1 explicitly states that it is "not limited to" the factors enumerated. The last sentence of Application Note 3 lends additional support to my conclusion. Truthful admission of guilt is significant evidence of acceptance. "However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." The issue appears to be whether the questioned conduct "is inconsistent" with defendant's statement that I realize I have done what I should not have done—engage in illegal conduct. To continue to engage in other illegal conduct puts the lie to the statement. The only other possible limitation on what may be considered under 3E1.1 is found in the Background Application Note parenthetical which might be read to limit the behavior which may be considered to that listed in Application Note 1 and "equivalent action." This is hardly a limitation, and certainly not one which eliminates unrelated criminal conduct from consideration, especially when the first listed factor is "withdrawal from criminal conduct."

This is not to say a murderer caught stealing gum cannot receive the acceptance of responsibility reduction. It is simply to state that a district court might or might not find the theft of chewing gum in particular circumstances illuminative of whether the murderer has accepted responsibility for her actions. I believe such a determination should rest with the district court. Under Application Note 5 the sentencing judge is entitled to great deference, and nothing in U.S.S.G. § 3E1.1 makes unrelated criminal conduct an impermissible consideration.

Thus, in the present case, when in denying the acceptance of responsibility reduction to defendant the District Court considered his attempted theft and use of a controlled substance, it acted within its discretion under the Guidelines. I would AFFIRM.