25 F.3d 1050
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES, Plaintiff-Appellee
v.
Philip Allen CARMAN, III, Defendant-Appellant.
 No. 93-6184.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1994.
 
 Before: NELSON, SURHEINRICH and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 On June 2, 1993, Philip Allen Carman, III, pleaded guilty to defrauding two banks through a "check-kiting" scheme, in violation of 18 U.S.C. Sec. 1344. On August 23, 1993, the district court sentenced Appellant to four months' imprisonment, to be followed immediately by concurrent terms of four months' home confinement and three years' supervised release. The sentence also included a $3,000.00 fine and the cost of supervision. The district court granted Appellant's motion to stay the execution of sentence pending appeal.
 
 
 2
 Appellant appeals his sentence on the basis of an inaccurate calculation of actual monetary loss to the banks. For the reasons stated below, we vacate Appellant's sentence and remand the case for resentencing.
 
 
 3
 * Appellant owns and operates a small truck line, Centennial Express, Inc., which advances the costs of shipping in anticipation of reimbursement by the shipper. For this purpose, Appellant secured a line of credit from First American National Bank. This line of credit eventually became insufficient to cover Centennial Express's up-front expenses. Because the life of his company depended on these advances, Appellant "kited" checks to compensate for the shortfall.
 
 
 4
 "Kiting" involves the exchange of checks between two or more bank accounts for the purpose of creating artificial balances. In this case, Appellant maintained a personal account at the Union Planters National Bank and a business account at First American National Bank. Over one-and-a-half months, Appellant drew checks on one account, knowing the account had insufficient funds, and deposited the checks into the other account. Appellant then drew checks on the second account, knowing the account had insufficient funds, and deposited the checks back into the first account. Because the banks credited the deposited checks several days before presenting the checks for payment, the delay created the appearance of sufficient funds in each account. Appellant monitored the accounts and repeated the kiting process regularly to perpetuate the illusion of sound accounts.
 
 
 5
 During this time, Appellant wrote checks totalling almost $300,000.00 and made legitimate deposits worth almost $200,000.00, using the difference to fund his business. When the scheme was discovered, First American National Bank had unsupported kited checks amounting to $6,348.00. Union Planters National Bank held checks drawn against the Union Planters account totalling $36,591.58. In the Union Planters account, however, a $17,844.00 check was on deposit. Union Planters did not immediately credit the $17,844.00 deposit towards the kited checks because the bank suspected the deposited check had also been kited. Upon discovering the check represented adequate funds, Union Planters used the $17,844.00 deposit to offset the $36,591.58 in floated checks. Once his kiting scheme was exposed, Appellant immediately made full restitution, paying First American National Bank $6,348.00 and Union Planters National Bank $18,747.57.[1]
 
 
 6
 At sentencing, the parties stipulated First American's actual loss of $6,348.00, but disagreed on the calculation of Union Planters's loss. Specifically, Appellant contended that Union Planters's loss should not include the amount of any checks for which legitimate funds were on deposit at the time the kiting scheme was discovered. The court, however, determined that Union Planters's actual loss was $36,591.58; the court refused to offset the loss by the $17,844.00 deposit, characterizing that check as "restitution." The total actual loss caused by Appellant's kiting scheme therefore reached $42,939.58.
 
 
 7
 For offenses in which the loss exceeds $40,000 but not $70,000, Sec. 2F1.1(b) of the United States Sentencing Guidelines mandates a five-point increase in the offense level. U.S.S.G. Sec. 2F1.1(b)(1)(F). Accordingly, the district court applied a five-point offense level increase for Appellant.
 
 
 8
 For offenses in which the loss exceeds $20,000 but not $40,000, the guideline specifies a four-point increase. U.S.S.G. Sec. 2F1.1(b)(1)(E). Had the actual loss figure reflected the $17,844 deposit, the increase in Appellant's offense level under Sec. 2F1.1 would have been four points.
 
 II
 
 9
 Appellant contests the trial court's refusal to offset the actual loss by the amount on deposit at the time of apprehension. Appellant argues that the loss upon which the sentence is based must reflect economic reality. Thus, actual loss is equivalent to net loss, or the amount of outstanding kited checks minus legitimate deposits. We agree.
 
 
 10
 * Section 3742, Title 18 of the United States Code, generally governs appellate review of sentences imposed under the sentencing guidelines. See United States v. Morrison, 983 F.2d 730, 721-32 (6th Cir.1993). Under Sec. 3742, this Court reviews interpretations of the guidelines de novo but upholds factual findings which are not clearly erroneous. Id.
 
 
 11
 The government argues that Appellant has a tough row to hoe because valuation of loss need only be within the " 'universe of acceptable computations.' " See United States v. Tardiff, 969 F.2d 1283, 1288 (1st Cir.1992). Indeed, the Guidelines permit a "reasonable estimate of the loss, given the available information." U.S.S.G. Sec. 2F1.1, comment. (n. 8). Contrary to the government's understanding, however, Appellant assigns a legal error, not a factual one. Appellant's chief argument is that the lower court improperly applied the Guidelines in failing to grant a mandatory offset, an assignment which this Court reviews de novo.
 
 B
 
 12
 Application Note 7 to Sec. 2F1.1 (Offenses Involving Fraud or Deceit) instructs courts on the valuation of loss due to fraud. U.S.S.G. Sec. 2F1.1, comment. (n. 7). In some instances, the court must consider factors which offset the amount of loss to the victim. For example, where the defendant represented stock worth $10,000 to be worth $40,000, the amount of the loss is $30,000. U.S.S.G. Sec. 2F1.1, comment. (n. 7(a)). Similarly, where the defendant obtains a loan fraudulently, but pledges legitimate collateral, the value of the collateral reduces the amount of the loss. U.S.S.G. Sec. 2F1.1, comment. (n. 7(b)). The question presented is whether deposits of legitimate funds made prior to the discovery of the check-kiting scheme, and available to pay checks drawn against the account, reduce the actual loss[2] relevant for sentencing purposes.
 
 
 13
 We hold that they do. This case is analogous to the case in which the defendant overstates the value of an item which does in fact have some value. See U.S.S.G. Sec. 2F1.1, comment. (n. 7(a)). In kiting checks, Appellant overstated the value of his bank accounts, which did in fact contain some money. Appellant's scheme of check-kiting, accompanied by his intention and practice of repaying the funds, is also comparable to the fraudulent acquisition of a series of unauthorized loans. See U.S.S.G. Sec. 2F1.1, comment. (n. 7(b)); United States v. Buckner, 9 F.3d 452, 453-54 (6th Cir.1993) (actual loss means amount of fraudulent loan not repaid at time offense is discovered, further reduced by value of collateral); United States v. Chichy, 1 F.3d 1501, 1508-09 (6th Cir.) (net loss is applicable standard in fraudulent loan cases), cert. denied, 114 S.Ct. 620 (1993).
 
 
 14
 Restitution is the repayment of amounts actually lost. Certainly, restitution made after apprehension cannot properly offset actual loss from a check-kiting scheme. See United States v. Carey, 895 F.2d 318, 322-24 (7th Cir.1990). However, Appellant's $17,844.00 check was not restitution; it was a legitimate check on deposit with the bank before discovery of the scheme. Those monies were available to pay the checks drawn against the account, and in fact Union Planters ultimately applied the deposit to Appellant's kited checks. Union Planters neither lost nor was in danger of losing those funds. Appellant's payments to Union Planters in the amount of $18,747.57 and to First American in the amount of $6,348.00, the balance of the outstanding unsupported checks, were restitution. This is important circumstantial proof of Union Planters's actual loss.
 
 
 15
 We agree with Appellant that the fraud loss must comport with economic reality. See United States v. Khan, 969 F.2d 218, 221 (6th Cir.1992). A bank cannot realistically be said to have actually lost money at its disposal. The court's failure to subtract Appellant's final legitimate deposit to determine actual loss was legal error.
 
 III
 
 16
 Based on the foregoing, we VACATE Appellant's sentence and REMAND Appellant for resentencing consistent with this opinion.
 
 
 
 [1]
 The restitution check and the check on deposit at the time of discovery equal $36,591.57, one penny short of Union Planters's alleged loss. The difference is immaterial to the case
 
 
 [2]
 Where intended loss and actual loss can be determined, the court is to apply the greater of the two figures. U.S.S.G. Sec. 2F1.1, comment. (n. 7). In this case, the government failed to prove intended loss by a preponderance of the evidence. This appeal thus concerns actual loss only