**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Princess SULLIVAN, Defendant–Appellant.**

**No. 01–5305.**

United States Court of Appeals, Sixth Circuit.

July 10, 2002.

Before KRUPANSKY and BOGGS, Circuit Judges; HOOD,* District Judge.

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

PER CURIAM.

Defendant–Appellant Princess Sullivan has challenged the district court's imposition of sentence pursuant to the Federal Sentencing Guidelines. First, Sullivan has contended that the district court's determination of the financial loss caused by her conduct failed to particularize the calculation to the circumstances of her case. Second, Sullivan has argued that the district court's refusal to grant her an acceptance of responsibility departure due to her failure to apprise the probation officer of subsequent felony charges was contrary to law.

Until her termination as a result of the instant conduct, Sullivan served as a driver for P & E Trucking, a Memphis-based concern which contracted with the United States Postal Service ("USPS") to transport registered mail from outlying locations to the Processing and Distribution Center ("PDC") in Memphis. From the time the registered mail is accepted to the time that it is delivered, the chain of custody is recorded. Hence, there is a record of every individual who handles registered mail from origin to destination. The USPS further assures security by using sealed pouches, locked containers and hand to hand processing for registered mail. The USPS employs the use of this registered mail service to transport funds for deposit to postal bank accounts.

In September, 1999, postal inspectors launched an investigation into missing registered mail containing Postal Service bank deposits. Inspectors determined that the missing registered mail originated in Post Offices located in Finley, Tiptonville, Covington and Ripley, Tennessee. Inspectors further determined that Sullivan was the driver responsible for transport of these

deposits to the PDC. In the course of their investigation, the postal inspectors concluded that, in transporting registered mail on five different dates, Sullivan managed to steal $22,850 in cash and $189,750.20 in checks. Because in some initial cases the receiving clerk at the PDC signed for pouches which were actually not delivered, inspectors speculated that Sullivan had taken advantage of busy time periods, where multiple drivers arrived with registered mail pouches.

On October 21, 1999, postal inspectors interviewed Sullivan, who initially denied committing the above-described thefts. The postal inspectors also conducted a search of her residence and her vehicle, recovering, among other things, $4,398 in cash and a $527.62 check from a company in Dyersburg, Tennessee made out to a company in Council Bluffs, Iowa. Sullivan explained that the cash was from casino winnings, for which she provided some documentation. Sullivan claimed to know the actual perpetrator, indicating that she might have pulled over and left the truck for a while during the transport of the stolen registered mail. Sullivan requested time to search for the stolen pouches, the location of which was known to her. Later in the interview, Sullivan confessed to the thefts. Sullivan then indicated that no one else was involved in the commission of the offense; she had alluded to others only in an attempt to deflect attention from her-

self. Sullivan stated that she burned the checks which were in the pouches.

On March 9, 2000, a federal grand jury indicted Sullivan on four counts of theft from the United States in violation of 18 U.S.C. § 641.[1] On November 29, 2000, after reaching a plea agreement with the government, Sullivan pled guilty to Count 2 of the indictment, which charged Sullivan with theft of postal funds on October 7, 1999. The district court then referred the matter to a probation officer for preparation of a Presentence Investigation Report ("PSR").

In the PSR, pursuant to U.S.S.G. § 2B1.1(b)'s guideline loss table,[2] the probation officer recommended a ten-level increase to Sullivan's total offense level based on the probation officer's calculation of loss, $213,127.82, which included both the cash and check losses.

In preparing the PSR, the probation officer made use of, among other things, pretrial services report forms submitted by Sullivan which responded to a series of questions. One of these questions was "have you been questioned by law enforcement or arrested since the last pretrial services report?" On October 20, 2000 and December 28, 2000, Sullivan submitted reports to the pretrial services officer, which falsely indicated that she had not been arrested. In fact, on October 1, 2000, local law enforcement officers arrested Sullivan

---

1. Count 1 charged Sullivan with theft on September 30, 1999. Count 2 charged Sullivan with theft on October 7, 1999. Count 3 charged Sullivan with theft on October 13, 1999. Count 4 charged Sullivan with theft on October 19, 1999.

2. The 2000 edition of the guideline loss table incorporated in § 2B1.1(b), provided, in part:

   (1) If the loss exceeded $100, increase the offense level as follows:

   | Loss (Apply the Greatest) | Increase in Level |
   | --- | --- |
   | (A) $100 or less | no increase |
   | (B) More than $100 | add 1 |
   | (C) More than $1,000 | add 2 |
   | (D) More than $2,000 | add 3 |
   | (E) More than $5,000 | add 4 |
   | (F) More than $10,000 | add 5 |
   | (G) More than $20,000 | add 6 |
   | (H) More than $40,000 | add 7 |
   | (I) More than $70,000 | add 8 |
   | (J) More than $120,000 | add 9 |
   | (K) More than $200,000 | add 10 |
   | (L) More than $350,000 | add 11 |
   | (M) More than $500,000 | add 12 |
   | (N) More than $800,000 | add 13 |
   | (O) More than $1,500,000 | add 14 |
   | (P) More than $2,500,000 | add 15 |

for theft of property in connection with her embezzlement of funds from her place of employment, Fred's Gang restaurant in Memphis. Sullivan was charged with, among other things, stealing nine checks and forging them by utilizing her employer's signature stamp. On November 20, 2000, the Sheriff's Office of Tunica County, Mississippi arrested Sullivan for Uttering a Forged Check in connection with her attempt to cash a check at the Horseshoe Casino in Memphis. The check was issued by her now-former-employer, Fred's Gang restaurant. Upon learning of the subsequent arrests, the probation officer amended the PSR to reflect a recommendation for an obstruction of justice adjustment and to withdraw the recommendation for an acceptance of responsibility adjustment. Sullivan did not object to the obstruction of justice adjustment, but did object to the lack of an acceptance of responsibility adjustment.

In addition, Sullivan filed a request for downward departure pursuant to § 5K2.0[3] of the Federal Sentencing Guidelines with the district court on the grounds that the case *sub judice* contained circumstances which were not considered by the Sentencing Commission when it drafted the guideline loss table. In particular, Sullivan contended that "the guideline loss table overstated the defendant's criminality" because she had not intended to cash the checks (she had allegedly burned them) and no proof had been adduced that she would cash the checks. In her request for a downward departure, Sullivan asserted that she had reviewed the PSR and had no objection to the report's recitation of her relevant conduct or to any other recommendation contained in the PSR.[4]

On February 27, 2001, the district court rejected Sullivan's request for a downward departure, concluding that nothing unusual existed in the case before the court which would justify a downward departure. The district court also refused to apply the acceptance of responsibility adjustment because the district court found that Sullivan had obstructed justice in her attempts to conceal her subsequent crimes. On February 28, 2001, Sullivan timely filed her notice of appeal.

Before this court, Sullivan has advanced two charges of error: (1) the district court improperly found that she intended to cause the loss of the uncashed checks and therefore improperly calculated her sentence; and (2) the district court improperly denied her an adjustment based on her acceptance of responsibility for the instant offense.

█ Sullivan has argued that the checks were never cashed, so they could not support a calculation of loss. Sullivan has particularly noted that one of the checks, which was for more than $185,000, would have been impossible for her to cash. Sullivan has argued that the sentencing court should have therefore considered only the *actual* loss. Normally, "[t]his Court reviews the district court's calculation of loss under the sentencing guidelines *de novo.*" *United States v. Fleming,* 128 F.3d 285, 287 (6th Cir.1997). However, in this case, as the government has properly contend-

---

**3.** Section 5K2.0 provides that "the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that de-

scribed." U.S.S.G. § 5K2.0 (internal quotation marks omitted).

**4.** The PSR was amended after Sullivan's supportive declaration. The PSR's recommendation for an acceptance of responsibility adjustment was withdrawn. Sullivan timely objected to that withdrawal.

ed, Sullivan submitted herself to the strictures of plain error review by failing to object on these grounds before the lower court.[5] *See United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998) ("Where, as here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by Fed.R.Crim.P. 52(b) before we may exercise our discretion to correct the error."). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.,* obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.*

"Before the district court may enhance a defendant's sentence based upon intended loss, there must be evidence sufficient to show that (1) the defendant intended the loss, (2) the defendant had the ability to inflict the loss, and (3) the defendant completed all acts necessary to cause the loss." *United States v. Fleming,* 128 F.3d 285, 287 (6th Cir.1997). The Sentencing Com-

mission has indicated that "[i]n the case of theft of a check or money order, the loss is the loss that would have occurred if *the check or money order had been cashed.*" U.S.S.G. § 2B1.1 Application Note 2 (2000) (emphasis added).

Sullivan has not demonstrated that the district court committed plain error when it included the uncashed checks in its total. Sullivan has claimed that she burned all the checks, but one check was found in her purse at the time of her interview.[6] Moreover, as the application note cited above provides, the loss calculation in cases where the theft is of a check is based on the loss amount if the check had been cashed.[7]

■ Additionally, Sullivan has charged that the district court erred in rejecting an acceptance of responsibility adjustment in her case. Sullivan has argued that her failure to apprise the probation officer of her subsequent arrests does not constitute evidence of lack of contrition for the instant offense. Moreover, Sullivan has contended that her timely plea of guilty entitles her to an acceptance of responsibility adjustment.

---

5. Instead, Sullivan filed a request for a downward departure on the grounds that the guideline loss table "overstated [her] criminality." This court does not review a district court's denial of a downward departure pursuant to Section 5K2.0 unless the district court indicates that it lacks the authority to depart. *See United States v. Orlando,* 281 F.3d 586, 589 (6th Cir.2002) ("[A] district court's decision declining to grant a downward departure is not appealable unless the court believed that it lacked the authority to grant a departure."). Sullivan has attempted to evade this restriction by recasting her argument as an objection to the district court's finding that she had intended the losses represented by the various checks.

6. In fact, this check was the first one she stole, which raises the question as to why it remained in her purse for that period of time, if not for the purpose of being cashed.

7. Sullivan has relied on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) as a basis for reversal, arguing that the amount of loss was not listed in the indictment so it cannot be used as a basis for sentencing. Sullivan misunderstands the import of *Apprendi. Apprendi* concerned propriety of a judge increasing the *statutory maximum* for a crime based on facts not submitted to a jury. The case *sub judice* concerns the location of the sentence *beneath* the statutory maximum. *See United States v. Fitch,* 282 F.3d 364, 368 (6th Cir.2002) ("We have held that *Apprendi* is not triggered where a defendant is sentenced to a term of imprisonment within the statutory maximum prescribed."); *cf. Harris v. United States,* —— U.S. ——, 122 S.Ct. 2406, ——, slip op. at 12, 153 L.Ed.2d 524 (2002) (Kennedy, J., plurality opinion) (declining to extend *Apprendi* to the use of mandatory minimums).

Section 3E1.1 ("ACCEPTANCE OF RESPONSIBILITY") of the Federal Sentencing Guidelines provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

Because of the district court's superior vantage point in assessing the depth of contrition on the part of the offender, appellate review of a district court's decision to deny an acceptance of responsibility adjustment is necessarily circumscribed. *See United States v. Harper*, 246 F.3d 520, 525 (6th Cir.2001). "[T]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, Application Note 5. "The determination of whether a defendant has accepted responsibility is a factual question for the district court which should be accorded great deference and should not be disturbed unless clearly erroneous." *United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir.1998).

The district court adjusted Sullivan's total offense level due to Sullivan's obstruction of justice in failing to inform the probation officer of her subsequent arrests.[8] Sullivan did not object to this enhancement. Sullivan instead argued that she accepted responsibility for all relevant conduct as that term is used in the Federal Sentencing Guidelines, *see* U.S.S.G. § 1B1.3,[9] and that the subsequent arrests did not constitute relevant conduct and were therefore immaterial.

However, Application Note 4 to the Acceptance of Responsibility Guideline explains that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." In denying the request for an acceptance of responsibility departure, the district court

---

**8.** Section 3C1.1 provides that "[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1.

**9.** Section 1B1.3 defines relevant conduct as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense [and] all harm that resulted from the acts and omissions specified ..., and all harm that was the object of such acts and omissions[.]" U.S.S.G. § 1B1.3(a).

noted in open court that "suffice it to say for fairly obvious reasons, there is just nothing extraordinary about this case that would warrant giving acceptance of responsibility when obstruction of justice points have been given.... I mean the failures to be candid in and of themselves take this out of the range of what might be an extraordinary case[.]"

"Sixth Circuit law interpreting this provision has consistently granted district courts great leeway when making this determination." *United States v. Roberts*, 243 F.3d 235 (6th Cir.2001). The extraordinary case exception is implicated where "the defendant's obstructive conduct does not outweigh the defendant's acceptance of responsibility." *United States v. Harper*, 246 F.3d 520, 528 (6th Cir.2001). The *Harper* court concluded that "it is, moreover, the defendant's burden to demonstrate that his case is 'extraordinary' such that he deserves the downward adjustment. This burden is not, however, insurmountable. For example, if a defendant awaiting trial escapes from custody but then immediately turns himself into authorities, this could constitute an 'extraordinary' case in which a defendant accepts responsibility subsequent to an attempt to obstruct justice. Similarly, had either defendant in this case immediately confessed after writing his obstructive letter and then offered to plead guilty, this would have been extremely persuasive evidence that his case was 'extraordinary' such that he merited the downward adjustment under § 3E1.1 despite his obstructive behavior." *Id.*

This court finds that it was not an abuse of discretion for the lower court to conclude that Sullivan's obstructive conduct in failing to inform the probation officer of her subsequent misdeeds continued her pattern of failing to express true contrition for her crimes. By falsely stating that she had not been arrested on her pretrial services reports, Sullivan continued to conceal her involvement in offenses akin to the charged offense. Sullivan's expressed contrition for her charged offense, the guilty plea, certainly was not extraordinary in light of her obstructive conduct.

Moreover, even if Sullivan had properly apprised the probation officer of her subsequent charges, the district court could have properly rejected the acceptance of responsibility departure based on the fact that Sullivan continued to engage in a similar course of conduct. *See* U.S.S.G. § 3E1.1, Application Note 1 ("In determining whether a defendant qualifies for a [acceptance of responsibility adjustment], appropriate considerations include, but are not limited to, the following: ... (b) *voluntary termination or withdrawal from criminal conduct* or associations[.]") (emphasis added). Sullivan has relied on *United States v. Morrison*, 983 F.2d 730, 734 (6th Cir.1993), for the proposition that a defendant may be entitled to an acceptance of responsibility adjustment for the indicted crime while continuing to commit other unrelated crimes. The *Morrison* court considered " 'voluntary termination or withdrawal from criminal conduct' to refer to that conduct which is related to the underlying offense. Such conduct may be of the *same type* as the underlying offense; or may be the *motivating force* behind the underlying offense; or may be *related to actions toward government witnesses concerning the underlying offense*; or may *involve an otherwise strong link* with the underlying offense." *Id.*

Sullivan's alleged subsequent conduct fits comfortably within the first category articulated in *Morrison*, namely her arrests were of the same type as the charge to which she pled guilty. In each of the instances, Sullivan engaged in theft of negotiable instruments, namely checks. The October 1, 2000 charge involved her for-

gery of her employer's checks to which she had access as an employee. The November 20, 2000 charge also involved the forgery of her then-former employer's checks. The instant offense involved checks and cash which were entrusted to her as an incident of her employment. The district court properly concluded that her omission of her continued felonious conduct was inconsistent with a true acceptance of responsibility.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.