NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0456n.06
No. 12-5879

**FILED**

**JUN 2 5 2014**

UNITED STATS COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**DEBORAH S. HUNT, Clerk**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JASON HOWARD, aka "J", | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH, MOORE and WHITE, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.**    This is a sentencing challenge involving an individual who committed a series of offenses related to cocaine trafficking. Defendant-Appellant Jason Howard ("Howard") pleaded guilty to conspiring to possess cocaine with the intent to distribute, possessing cocaine with the intent to distribute, and money laundering. The district court sentenced him to a term of 360 months. We VACATE the sentence, and REMAND the case for resentencing.

## I. BACKGROUND

Howard was involved with the McCarthy drug ring in Louisville, Kentucky, from December 2008 until May 2010. Its leader, Michael McCarthy, Jr., imported hundreds of kilograms of cocaine, that was in turn distributed by others, including Howard, who would then distribute it to lower level cocaine dealers and cocaine users.

The Drug Enforcement Administration tapped Howard's phone from December 2009 to February 2010. On January 5, 2010, Howard told co-defendant Dwayne Martin by telephone that he bought an AR-15 assault rifle and hid it in Howard's closet. Other calls indicated that Howard left cocaine in his grill or his shed outside his house for customers to pick up.

Howard spoke with co-defendant Jason Bald over the phone several times about finding a source of cocaine other than McCarthy. Bald and Howard discussed a new source in Columbus, Ohio, deciding that Bald would take $90,000 to Columbus to buy three kilograms of cocaine.

On February 26, 2010, Bald traveled to Columbus to buy cocaine from the new source. When Bald arrived in the hotel room where he was scheduled to meet the source, Bald called Howard and told Howard he would call when the supply arrived. Bald bought two kilograms from the source for $64,000, and police arrested Bald when he left the hotel with $30,000 cash and two kilograms of cocaine.

In May 2010, Drug Enforcement Administration agents arrested Howard, executed a search warrant, and seized an AR-15 assault rifle and a handgun from Howard's house in Louisville.

On May 11, 2010, a federal grand jury returned a superseding indictment that charged Howard with three counts: Count 1, conspiring to possess cocaine with the intent to distribute, 21 U.S.C. § 846; Count 5, possessing cocaine with the intent to distribute, 18 U.S.C. § 841(a)(1); and Count 6, money laundering, 18 U.S.C. § 1956(a)(1).

In June 2011, with Howard's charges pending, jail officials confiscated a cell phone that Howard hid in his underwear. In September 2011, jail officials confiscated another cell phone and cell phone charger hidden between two pairs of Howard's underwear. Howard violated 18 U.S.C. § 1791(a)(2) when he possessed the cell phones in jail.

On August 23, 2011, Howard pleaded guilty to the three counts in the superseding indictment.

At Howard's sentencing hearing, the district court found the appropriate base offense level to be 36 under U.S.S.G. § 2D1.1(c)(2) because Howard trafficked at least 59 kilograms of cocaine. Next, the court enhanced Howard's base offense level by three levels under § 3B1.1 because the court found that Howard managed or supervised others in the McCarthy drug ring. The court concluded that Howard was a manager or supervisor because there were five or more participants in the crime, he had some decision-making authority as to cocaine distribution, the McCarthy drug ring was a large scale operation, and Howard dealt directly with its leader McCarthy in obtaining the cocaine and passing it down. (R. 572 at #1979-81).

The court also enhanced Howard's offense level by two levels under § 2D.1(b)(1) because Howard possessed dangerous weapons while he committed his drug crimes. The court found that Howard possessed a handgun and an AR-15 assault rifle at his home during his tenure as a cocaine dealer.

The court found Howard ineligible for an acceptance of responsibility offense level reduction under § 3E1.1 because he committed a misdemeanor offense while in detention (violating 18 U.S.C. § 1791(a)(2) by possessing a cell phone in jail).

Together, the court found that Howard's total offense level was 43. With his criminal history category of III, Howard faced a guideline range of life imprisonment. The court varied downward to a total sentence of 360 months' custody. Howard appeals that sentence.

## II. STANDARD OF REVIEW

We review sentences under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). "Appellate review of sentencing decisions is limited to

3

determining whether they are 'reasonable.'" *Id.* at 46. The reasonableness review is split into two parts: procedural reasonableness and substantive reasonableness. *United States v. Benson*, 591 F.3d 491, 500 (6th Cir. 2010).

Procedural errors include improperly calculating the Sentencing Guidelines range, considering the Sentencing Guidelines mandatory, ignoring the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51. When reviewing individual Sentencing Guidelines determinations, we consider factual findings under the clearly erroneous standard and application and interpretation of the Sentencing Guidelines under the de novo standard of review. *Benson*, 591 F.3d at 504. If the district court's sentencing decision is procedurally sound, we then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *Gall*, 552 U.S. at 597.

## III. ANALYSIS

### A. Leadership Enhancement

Howard argues that the leadership sentence enhancement should not apply because others in the conspiracy had similar roles, he did not direct other persons in the conspiracy, and he did not earn a higher share of the proceeds from the drug trafficking operation. We disagree.

Section 3B1.1(b) of the Sentencing Guidelines provides that "If the defendant was a manager or supervisor (but not an organizer or a leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." U.S.S.G. § 3B1.1. In determining whether a defendant qualifies for this leadership enhancement, we consider:

> The exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or

4

organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*United States v. Hernandez*, 227 F.3d 686, 699-700 (6th Cir. 2000) (quoting U.S.S.G. § 3B1.1 cmt. n.4). A defendant can still qualify for a leadership enhancement even though he does not meet every factor. *United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006). Although a sentencing enhancement is not appropriate under § 3B1.1 where a defendant "merely exercised control over the property, assets, or activity of the enterprise," *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004), to apply this enhancement, "there need only be evidence to support a finding that the defendant was a manager or supervisor of at least one other participant in the criminal activity, and that the criminal activity involved five or more participants or was otherwise extensive." *United States v. Moncivais*, 492 F.3d 652, 661 (6th Cir. 2007).

The record demonstrates sufficient evidence that Howard participated in the conspiracy at a high level and managed or supervised at least one other participant in the McCarthy drug ring. Howard supplied cocaine to at least ten people below him. He and co-defendant Onrea Flynn moved the most cocaine in the conspiracy. Howard also managed or supervised co-defendants Bald and Dorsey. For example, regarding the transaction in which Bald travelled to Columbus, Ohio to purchase cocaine, Howard directed Bald in a phone conversation as follows: "All right. Then make sure everything is a go. If everything is a go, then go ahead and grab the money." R. 572 at 1943. Howard and Bald also used Dorsey to lease the apartment that served as a stash house, to pick up customer's money, and to make purchases.[1] *See Moncivais*, 492 F.3d at 661.

---

[1] Howard asserts that his statement to Bald does not constitute direction; rather, it was a confirmation of plans between equal partners. Howard also argues that it is unclear from the record whether Dorsey worked under Howard or whether he instead worked under Bald or acted on his own initiative. However, Agent Cryan testified that Dorsey was "an individual that Howard and Bald used to pick up money from their customers as well as to purchase things, lease locations, and assist in further drug trafficking." R. 572 at #1936.

5

Finally, regarding the scope of the illegal activity, the district court correctly found that Howard was part of a large-scale operation involving millions of dollars and many kilograms of cocaine.

The district court did not abuse its discretion in applying the leadership enhancement to Howard.

## B. Dangerous Weapon Enhancement

Howard argues that the dangerous weapon enhancement should not apply, challenging the district court's factual finding that he possessed dangerous weapons while he dealt cocaine, and the district court's application of those factual findings to the Sentencing Guidelines. We disagree.

Before a district court can apply a sentencing enhancement under U.S.S.G. § 2D1.1(b)(1), the government must show "by a preponderance of the evidence that the defendant either actually or constructively possessed the weapon." *United States v. Darwich*, 337 F.3d 645, 665 (6th Cir. 2003) (citation and internal quotation marks omitted). "Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996), *cert. denied*, 519 U.S. 858 (citation and internal quotation marks omitted).

Here, the district court found that Howard possessed two firearms, an AR-15 assault rifle and a handgun, at his house while dealing drugs. Drug Enforcement Administration Agents seized the guns from Howard's house, and Howard told a cocaine customer in a January 5, 2010 telephone call that he stored his AR-15 in his closet. The government thus met its burden of proving that Howard possessed dangerous weapons.

6

If the government establishes that the defendant possessed a weapon, a presumption arises that "the weapon was connected to the offense. The defendant must then show that it was clearly improbable that the weapon was connected with the crime." *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002) (citation and internal quotation marks omitted). "A defendant must present evidence, not mere argument, in order to meet his or her burden." *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012). This Court considers the following factors, none of which is controlling, when determining whether the application of a § 2D1.1(b)(1) enhancement was appropriate:

> (1) The type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*Id.* at 515. This Court considers whether the firearm was loaded and any alternative purpose offered to explain the presence of the firearm. *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002).

Howard fails to meet his burden of proving that it was clearly improbable that his possession of the two firearms was connected to the drug trafficking. First, the guns were found inside Howard's house and therefore close to where evidence shows Howard kept cocaine and proceeds of drug transactions. Multiple intercepted calls showed that Howard left cocaine in his grill or his shed outside his house for cocaine customers to pick up, and the Government presented evidence that ten to twelve drug transactions took place at Howard's house. Second, agents found both firearms loaded.[2] Third, Howard's only alternative explanation, that he used

---

[2] Howard argues that his AR-15, stored in his garage, had only one cartridge left in the chamber with no magazine in proximity to hold more ammunition, asserting that the AR-15 was therefore not loaded in an "effective" manner because one round in the chambers negates any more

7

the guns for home defense, does not detract from the district court's finding. In sum, we cannot say that the district court's determination that Howard failed to show it was clearly improbable that his firearms were connected to his drug offense was clearly erroneous. *See Greeno*, 679 F.3d at 515 (defendant failed to show it was improbable that firearms were connected to drug offense where search took place following purchase of drugs at the property and firearms that were found throughout the property in relatively close proximity to the drugs and drug paraphernalia); *United States v. Cobbs*, 233 F. App'x 524, 543 (6th Cir. 2007) (upholding firearm enhancement where there was evidence of two loaded guns found in a safe at the residence where drugs were sold). We conclude that there was no error resulting from the enhancement of Howard's base offense level pursuant to § 2D1.1(b)(1).

## C. Acceptance of Responsibility

Howard argues that the district court erred in denying him an acceptance of responsibility reduction. He submits that the district court's conclusion was based solely on criminal conduct unrelated to the offenses for which he plead guilty, thus running afoul of this Court's decision in *United States v. Morrison*, 983 F.2d 730, 735 (6th Cir. 1993) (holding that a district court may

---

"sinister" characteristics of the weapon. We see no merit in this argument. Howard further argues that the presence of weapons at his residence, without proof that he was present for the transactions or had access to the weapons was facilitating transactions, is insufficient to apply the enhancement. We disagree. *See United States v. Snyder*, 913 F.2d 300, 304 ("The key is always whether the placement of the gun or guns suggests they would be quickly available for use in an emergency.") (citation and quotation marks omitted). In addition to the AR-15, Howard also possessed a loaded handgun stored in a drawer in his bedroom with two magazines. R. 572 at #1944-46. This Court's holding in *Greeno* is instructive. In that case, Greeno argued that the district court erred by applying a firearm enhancement because there was no direct evidence showing he possessed a firearm when he sold drugs. *Greeno*, 679 F.3d at 515. This Court held that because officers conducted a search of Greeno's home only a few days after the controlled purchase of methamphetamine at Greeno's property, and found firearms throughout the property in relatively close proximity to the drugs and drug paraphernalia, Greeno had ready access to the firearms and failed to show that it was clearly improbable that the firearms were connected to his drug offense. *Id.* Similarly, the presence of loaded guns in various locations throughout Howard's property demonstrates his ready access in case of an emergency.

8

consider a defendant's subsequent criminal conduct only if it is related to the offense of conviction in deciding whether an acceptance of responsibility reduction is appropriate).

Under § 3E1.1(a), a defendant may receive a two-point reduction in his offense level if he accepts responsibility for the charged offense and acts in a manner consistent with that acceptance, such as by confessing or admitting guilt. *See* U.S.S.G. § 3E1.1(a) cmt. n.1. The district court must consider a number of factors in determining whether to grant the credit, including the defendant's "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1(a) cmt. n.1. Although "truthfully admitting . . . relevant conduct" should be treated as "significant evidence of acceptance of responsibility," an admission "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility," U.S.S.G. § 3E1.1(a) cmt. n.3, including continuing criminal conduct. However, new criminal conduct which is unrelated to the offense of conviction should not be considered in determining acceptance of responsibility. *Morrison*, 983 F.2d at 733-35.

Here, the Government presented testimony from Detective Hammond of the Kentucky State Police regarding his investigation into Howard's alleged possession of contraband while detained. Hammond testified that officers found Howard in possession of two cell phones and a charger, and later intercepted a package containing marijuana mailed to Howard at the facility. Hammond also interviewed three inmates who claimed that Howard was involved in the narcotics trade at the prison.

While considering Howard's entitlement to the acceptance of responsibility reduction, the district court determined that it could not consider evidence of marijuana mailed to the jail because there was not a sufficient connection between Howard and the unknown individual who mailed the marijuana, and determined that it could not consider the allegations that Howard was

9

involved in narcotics trafficking at the prison because the evidence was too vague. However, the district court considered the possession of a cell phone by Howard sufficient to remove credit for acceptance of responsibility.

The Government argues that the fact that Howard violated federal law by possessing a cell phone in prison demonstrates his lack of acceptance of responsibility for his drug trafficking offenses. The Government concedes that a defendant's unrelated post-plea criminal conduct is not relevant to a court's acceptance of responsibility finding under *Morrison*, but argues that Howard's criminal conduct is relevant because it occurred pre-plea. However, *Morrison* does not make a distinction between pre- and post-plea criminal conduct. *Morrison*, 983 F.2d at 735.

In *Morrison*, the defendant had been indicted for being a felon in possession of a firearm. *Id.* at 733. Following his arrest, after posting bond, the defendant failed a drug test and was indicted for attempted auto theft. *Id.* In considering whether to apply the acceptance of responsibility reduction, the district court counted the defendant's attempted theft as a factor against him, and also may have counted the positive drug test against him. This Court remanded, finding it improper for the district court to consider unrelated criminal conduct committed after indictment but before sentencing. *Morrison*, 983 F.2d at 735; *see also United States v. Banks*, 252 F.3d 801, 807 (6th Cir. 2001) (holding that defendant's post-plea assault and destruction of property charges were plainly unrelated to the drug trafficking and firearm offenses for which he was being sentenced); *United States v. Ackerman*, 246 F. App'x 996, 999 (6th Cir. 2007) (concluding that defendant's post-plea drug screens did not undercut his guilty plea in his firearm case). The rationale in the *Morrison* decision is such that it would not permit the district court to distinguish pre- and post-plea criminal conduct.

Although the great weight of authority from other circuits is to the contrary, we are bound by *Morrison*'s holding that unrelated criminal activity cannot be the basis of refusing acceptance of responsibility.[3] We vacate the sentence and remand for resentencing so that the district court may readdress the acceptance of responsibility reduction.[4]

## IV. CONCLUSION

The judgment of the district court is REVERSED and REMANDED for resentencing to readdress the acceptance of responsibility reduction in accordance with this opinion.

---

[3] *See United States v. O'Neil*, 936 F.2d 599, 600-01 (1st Cir. 1991); *United States v. Fernandez*, 127 F.3d 277, 285 (2d Cir. 2001); *United States v. Ceccarani*, 98 F.3d 126, 129-30 (3d Cir. 1996); *United States v. Crawford*, No. 97-4159,125 F.3d 849, *1 (4th Cir. 1997) (unpublished); *United States v. Pharris*, No. 93-9055, 32 F.3d 565, *2 (5th Cir. 1994) (unpublished); *United States v. Higgins*, 86 Fed. App'x 204, 206 (7th Cir. 2004) (unpublished); *United States v. Byrd*, 76 F.3d 194, 197 (8th Cir. 1996); *United States v. Mara*, 523 F.3d 1036, 1038-39 (9th Cir. 2008); *U.S. v. Prince*, 204 F.3d 1021, 1023-24 (10th Cir. 2000); *United States v. Pace*, 17 F.3d 341, 343-44 (11th Cir. 1994).

[4] Because we vacate and remand for resentencing, we need not address Howard's claims that the district court failed to consider the 18 U.S.C. § 3553(a) factors or that his 360-month sentence is substantively unreasonable.